ROY HARRIS, Respondent, v DOMINICK IANNACCONE et al., Appellants.

First Department, April 4, 1985

### APPEARANCES OF COUNSEL

*Edward V. Walsh, Jr.,* of counsel (*Yvonne R. Cort* with him on the brief; *Lawrence, Ciovacco & Walsh, P.C.,* attorneys), for appellants.

*Kurt J. Wolff* of counsel (*Otterbourg, Steindler, Houston & Rosen, P.C.,* attorneys), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J.

Plaintiff-respondent Harris brought this action against appellants Iannaccone, Peck and Nelson alleging unlawful discrimination. Harris had been with Advertising Distributors of America (ADA) since 1947. In 1968, he was president; by 1972 he

owned 80% of the company. The company entered Chapter XI/bankruptcy in 1974 (11 USC § 101 *et seq.*) and emerged successfully in 1976. As of 1980, the ownership of the company had been redistributed so that appellant Iannaccone held 40%, as did Harris. Appellant Peck held 12% with the remaining 8% otherwise held. Appellant Nelson was an outside consultant who became affiliated with the company in 1976.

Harris discovered in August of 1979 that he had been afflicted with a progressive neurological disease — primary lateral sclerosis, which affected his ability to walk. In the spring of 1980, based upon Nelson's advice, Iannaccone demanded that Harris resign as president and appoint Iannaccone in his place, to which Harris agreed. From that point forward, Harris alleges that the appellants refused to deal with him. He had questions relating to the alleged disappearance of corporate funds, the company's growth and the propriety of having Nelson as a consultant, owing to his having interests contrary to ADA.

At a meeting in 1983, Iannaccone allegedly told Harris that Harris' illness made Iannaccone "ill" and that Iannaccone did not wish to be Harris' partner any longer. A special meeting of the board of directors was held on July 26, 1983 which considered Harris' medical disability and purported inability to perform his duties as an employee. Based on the votes of Iannaccone and Peck, Harris was terminated.

Harris brought this proceeding as a result of the board's action, alleging that he was discharged solely due to his disability. Harris' complaint stated two separate causes of action. The first cause alleged discrimination, the second alleged injury to his business reputation. Appellants' answer stated that pursuant to the shareholder agreement, all disputes relating to the parties, or the subject matter of the agreement or to the business matters of the company were to be arbitrated. Appellants moved to compel arbitration of this dispute, which was denied by the Supreme Court, New York County (Stecher, J.), filed August 1, 1984. We modify so as to permit arbitration of the second cause of action.

■ Arbitration "is now favorably recognized as an efficacious procedure whereby parties can select their own nonjudicial forum for the 'private and practical' resolution of their disputes" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629). However, the right to arbitrate may be lost by extensive courthouse proceedings. (*Sherrill v Grayco Bldrs.*, 64 NY2d 261 [decided Feb. 12, 1985].) In addition, "arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong

public policy which must be judicially enforced" (*Matter of Wertheim & Co. v Halpert,* 48 NY2d 681, 683). Certain areas of the law have been found to be nonarbitrable, e.g., Federal securities laws (*Wilko v Swan,* 346 US 427); antitrust laws (*Matter of Aimcee Wholesale Corp. [Tomar Prods.],* 21 NY2d 621; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411); child custody (*Nestel v Nestel,* 38 AD2d 942); and distribution of an estate (*Matter of Jacobovitz,* 58 Misc 2d 330). Discrimination is also one of these areas. (*Matter of Wertheim & Co. v Halpert, supra.*) Thus, Harris is entitled to have a judicial forum to air his charge of discrimination.

The injury to Harris' business reputation is still subject to the arbitration agreement. The question then arises as to how these two causes of action should be heard. "Where a complaint alleges both Federal securities and common-law claims, the court will stay adjudication of the Federal security claims until the common-law claims are resolved in arbitration." (*Harris v Shearson Hayden Stone,* 82 AD2d 87, 91, *affd* 56 NY2d 627.) The proper course of action is to sever the two causes of action (*Matter of Quick & Reilly [Davidson],* 103 AD2d 958). This allows the injury to business reputation to proceed through arbitration and the discrimination cause of action to continue through the courts. However, "[a]llowing the petitioner to pursue its claim in arbitration at this time risks chilling the exercise of the statutory right and poses the possibility of inconsistent verdicts in the two proceedings." (*Matter of Wertheim & Co. v Halpert, supra,* p 683.) Therefore, the arbitration proceedings should be stayed, pending the outcome of the discrimination action.

Accordingly, the order of the Supreme Court, New York County (Stecher, J.), entered August 1, 1984 should be modified, on the law, so as to sever the two causes of action, and to stay the second cause of action for injury to business reputation, pending determination of the discrimination action and otherwise affirmed, without costs.

MURPHY, P. J. (dissenting). In 1978, at a time when he owned 80% of Advertising Distributors of America (ADA), plaintiff Harris entered into a shareholder's agreement with defendants Iannaccone and Peck among others. The agreement contained a broad arbitration clause requiring that "[a]ny differences, disputes or disagreements arising between the parties to the Agreement concerning either the subject matter or any business

matters pertaining to [ADA] * * * shall be determined by arbitration". At the time of his termination, Harris' holding in this closely held company had dwindled to 40%, and it was the combined 52% holding of Iannaccone and Peck which weighed most heavily in the board of directors decision to force Harris out of the day-to-day operations of ADA. The relationship between the defendants and the plaintiff is not that of employer-employee as contemplated by the Human Rights Law (Executive Law § 290 *et seq.*) but of coshareholders. As such, the provisions of the shareholder's agreement relating to arbitration should govern. To hold otherwise is to inject the provisions of the Human Rights Law into what are essentially boardroom disputes between coequals. It also leads to the logically anomalous situation here presented where the plaintiff has refused to name his true employer, ADA, as a defendant because 40% of any recovery against ADA would "come out of his own pocket as a shareholder." It must follow that plaintiff was 40% responsible for his own allegedly discriminatory firing.

ASCH and BLOOM, JJ., concur with KUPFERMAN, J.; MURPHY, P. J., dissents in an opinion.

Order, Supreme Court, New York County, entered on August 1, 1984, modified, on the law, so as to sever the two causes of action, and to stay the second cause of action for injury to business reputation, pending determination of the discrimination action and otherwise affirmed, without costs and without disbursements.