*629 OPINION OF THE COURT
Titone, J.
In Matter of Wertheim & Co. v Halpert (48 NY2d 681), this Court held that because of the strong public policies embodied in Federal, State and local antidiscrimination laws, anticipatory agreements to arbitrate are unenforceable in the context of disputes involving claims of unlawful discrimination. The issue before us on these appeals is whether subsequent case law has rendered that holding obsolete in cases where the enforceability of the arbitration clause is governed by the Federal Arbitration Act (the FAA) (9 USC § 1 et seq.). We hold that, in light of recent Supreme Court decisions, most notably the Court’s decision in Gilmer v Interstate/Johnson Lane Corp. (500 US 20, 111 S Ct 1647), our 1979 decision in Wertheim should no longer be followed in cases governed by the FAA. Instead, the arbitrability of statutory discrimination claims is henceforth to be determined by reference to Congress’ intent with regard to alternative dispute resolution of that class of claims.

Fletcher v Kidder, Peabody & Co.

Plaintiff, an African-American formerly employed in defendant’s equity trading department, commenced this judicial action under the State Human Rights Law, alleging that he had been the victim of racial discrimination in employment in violation of Executive Law § 296 (1) (a). In response, defendant moved to stay the action and compel arbitration on the basis of the broad arbitration clause contained in the Uniform Application for Securities Industry Registration or Transfer (the U-4 Form) that plaintiff had signed as part of his application for registration with the various securities exchanges.[1] The motion was predicated on defendant’s contention that the FAA, which preempts State law, is applicable and that that Federal statute mandates enforcement of plaintiff’s promise to submit "controversies] * * * arising out of [his] employment” to arbitration.
The IAS Court denied the motion, reasoning that "it would *630 be against public policy to contract in advance for a [waiver of the right to obtain judicial redress of alleged racial discrimination].” The Appellate Division, however, reversed and granted the requested relief after concluding that the FAA and the cases decided under that statute mandated enforcement of plaintiff's arbitration agreement (184 AD2d 359).

Reid v Goldman, Sachs & Co.

Initially hired as a research assistant, plaintiff subsequently became a registered securities representative for defendant investment firm. As part of her registration application filed with the New York Stock Exchange, plaintiff was required to execute a U-4 Form containing a broad agreement to submit disputes arising out of her employment to arbitration. Some 13 years later, plaintiff was terminated from her position as a vice-president within defendant’s firm.
Following her termination, plaintiff commenced the present action, alleging that she had been the victim of gender-based discrimination in violation of the State Human Rights Law (Executive Law § 290 et seq.). In response, defendant invoked the arbitration clause in the U-4 Form plaintiff had signed, contending that the dispute fell within the clause’s terms and that the FAA mandated the clause’s enforcement.
The IAS Court held in defendant’s favor, concluding that plaintiff was obliged to arbitrate the discrimination claim. On plaintiff’s appeal, the Appellate Division affirmed. Relying on Gilmer v Interstate/Johnson Lane Corp. (supra), the Court reasoned that plaintiff could be "compelled to arbitrate a State-based sex discrimination claim under the [FAA]” (188 AD2d 350).
I.
We begin with the premise, which is now well embedded in our case law, that the enforceability of the arbitration clause contained in these plaintiffs’ U-4 Form applications is governed by the FAA (see, Singer v Jefferies & Co., 78 NY2d 76, 81; Flanagan v Prudential-Bache Sec., 67 NY2d 500). A further basic principle that is essential to our analysis is the corollary tenet that, in situations where the FAA is applicable, it preempts State law on the subject of the enforceability of arbitration clauses (Southland Corp. v Keating, 465 US 1; see, Singer v Jefferies & Co., supra, at 81). Indeed, the provisions of the FAA are controlling even though the dispute itself *631 may arise under State law (see, Southland Corp. v Keating, supra). Thus, regardless of what our own State’s policies or case law might dictate in other circumstances, we are bound by the policies embodied in the Federal statute and the accompanying case law, and our prior State law holdings remain independently operative only to the extent that they have not been preempted by Federal law and policy.
In Matter of Wertheim & Co. v Halpert (supra), this Court held that an arbitration clause contained in a U-4 Form similar to those signed by plaintiffs was unenforceable in a dispute concerning a claim of discriminatory conduct in employment. At that time, the Court reasoned that important public policies are implicated in this area "where particular remedies are afforded by both State and Federal statutes” and, further, that allowing the employer to force the employee into arbitration "risks chilling the exercise of the statutory right” (id., at 683). The FAA and the impact of Federal law were not discussed, although the Court did make passing reference to Alexander v Gardner-Denver Co. (415 US 36), an employment discrimination case involving an arbitration clause that was not governed by the FAA.
The legal developments in the 13 years since Wertheim was decided necessitate a reexamination of that precedent. Although the United States Supreme Court has not squarely and directly addressed the enforceability of anticipatory arbitration clauses for disputes involving statutory prohibitions against racial and gender discrimination, it has considered the same issue in the context of a statutory age discrimination dispute and, in the process, has established a clear analytical framework for use in all cases in which an FAA-governed arbitration contract is invoked to force a nonjudicial resolution of a claim arising from statute (Gilmer v Interstate/ Johnson Lane Corp., 500 US 20, 111 S Ct 1647, supra).
Contrary to the dissent’s urgings, we cannot cling to the 13-year-old holding in Wertheim in the face of this recent definitive Supreme Court ruling solely because the nature of the statutorily prohibited discrimination alleged in Gilmer differs from the types of statutorily prohibited discrimination challenged in these two cases (see, Dean Witter Reynolds, Inc. v Alford, — US —, 111 S Ct 2050, on remand 939 F2d 229 [remanding for reconsideration of arbitrability of title VII gender discrimination claim in light of Gilmer v Interstate/ Johnson Lane Corp., supra]). While adherence to State prece *632 dent may be justified in the absence of clear guidance from the Supreme Court (see, Herzog Bros. Trucking v State Tax Commn., 72 NY2d 720), we are bound to follow both the holding and the rationale of the Nation’s highest Court on this and other questions of Federal law when, as here, there is no ambiguity in the Court’s position (see, Flanagan v Prudential-Bache Sec., supra, at 505-506).[2] Indeed, any argument about the continued vitality of Wertheim is, necessarily, a "red herring,” since, as the dissent itself acknowledges, even the plaintiff in Fletcher would utilize the methodology mandated in Gilmer v Interstate/Johnson Lane Corp. (supra) to establish his right to be relieved of the obligations imposed by his agreement to arbitrate (dissenting opn, at 640).[3]
Under that methodology, the party seeking to avoid enforcement of an arbitration clause governed by the FAA must demonstrate a congressional intent "to preclude a waiver of a judicial forum” for disputes based on a particular statutory right (Gilmer v Interstate/Johnson Lane Corp., 500 US, at —, 111 S Ct, at 1652, supra; see also, Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, supra; Singer v Jefferies & Co., 78 NY2d 76, supra; cf., Alexander v Gardner-Denver Co., 415 US 36, supra [involving arbitration agreement that was not subject to the FAA]). Where the right is predicated on a State or local statute rather than on a congressional enactment, it is undisputed by these parties that the courts are obliged to draw an analogy to the equivalent Federal law, where possible, and to consider Congress’ intentions with regard to the rights created by that law.[4]
*633 The closest Federal analog to Executive Law § 296 (1) (a), under which these plaintiffs’ claims arise, is title VII of the Civil Rights Act (42 USC § 2000e et seq.). Contrary to the Fletcher plaintiff’s contentions, there is nothing in the legislative history of either that Federal statute itself or the recently adopted amendments to that statute (Pub L 102-166, 105 US Stat 1Q71 [the Civil Rights Act of 1991]) that would suggest the existence of a congressional intent to override the general rule that anticipatory contracts to arbitrate are enforceable under the FAA.
The amendment that the dissent cites, which authorizes the use of alternative dispute resolution methods for controversies arising under title VII (Pub L 102-166, tit I, § 118, 105 US Stat 1081), merely adds to the existing, statutorily created right to seek relief in judicial and administrative forums (see, 42 USC § 2000e-5 [b], [c], [f]). That amendment does not shed any light on Congress’ intentions with regard to anticipatory agreements to use arbitral forums in the event of a future dispute. It is true that the amendment’s cosponsor, Congressman Edwards, stated in the Congressional Record that the amendment was "intended to be consistent with decisions such as Alexander v Gardner-Denver Co. [supra], which protect employees from being required to agree in advance to arbitrate disputes” and that "[n]o approval whatsoever is intended of the Supreme Court’s recent decision in [Gilmer] v. Interstate Johnson Lane Corp. [supra] * * * or any application or extension of it” (137 Cong Rec H9530 [daily ed, Nov. 7, 1991]). However, this statement cannot be viewed as indicative of the intentions of Congress as a whole, since it expresses only the position of the individual legislator who made it.
Similarly, the Reports of the House Education and Labor *634 Committee (HR Report No. 102-40 [I], 102d Cong, 1st Sess 97, reprinted in 1991 US Code Cong & Admin News 549, 635) and the House Judiciary Committee (HR Report No. 102-40 [II], 102d Cong, 1st Sess 41, reprinted in 1991 US Code Cong & Admin News 694, 735), on which the plaintiff in Fletcher relies, are not useful indicators of congressional intent with regard to the enforceability of arbitration contracts in title VII disputes. While those reports have more persuasive value than do Representative Edwards’ personal remarks in terms of their ability to reflect Congress’ intent, they are not particularly helpful to plaintiffs’ positions here, because they merely set forth the committees’ understanding of the enforceability of arbitration agreements in discrimination disputes under the then-existing Supreme Court precedent. Indeed, the section of the committee report on which the dissent relies states only that the committee "believes that any agreement to submit disputed issues to arbitration * * * does not preclude the affected person from seeking relief under the enforcement provisions of Title VII[, a] view [which] is consistent with the Supreme Court’s interpretation of Title VII in Alexander v. Gardner-Denver Co. [supra]” (HR Report No. 102-40 [I], op. cit, at 97, reprinted in 1991 US Code Cong & Admin News 635 [emphasis added]). This section, of course, says nothing about what Congress actually intended.
It is true that the legislative history of title VII and its recent amendments does not demonstrate that Congress affirmatively intended to authorize anticipatory agreements to arbitrate claims arising from the statute’s provisions. However, the Gilmer formula makes such a showing unnecessary. The FAA itself evidences a broad congressional intention to enforce agreements to arbitrate in accordance with their terms. Thus, under Gilmer, the burden is on the party seeking to avoid arbitration of a statutory claim to show that Congress specifically intended to preclude waivers of the right to judicial remedy for such claims. Here, the cited legislative history does not satisfy that burden. Consequently, in the absence of clear and unambiguous proof of legislative intent to the contrary, we are obliged to hold that these cases are governed by the presumption of arbitrability that is established by the FAA.
II.
Since there is no evidence that Congress intended to limit *635 the enforceability of FAA-governed arbitration agreements in the context of this class of disputes, the courts below were correct in concluding that plaintiffs’ State Human Rights Law claims should be submitted to arbitration under the terms of the U-4 Forms they signed. To the extent that our decision in Matter of Wertheim & Co. v Halpert (48 NY2d 681, supra) suggests the contrary, it has been superseded by subsequent Supreme Court precedent and is not to be followed.
In response to the dissent’s argument that the waiver of judicial review implicit in plaintiff’s U-4 Form should not be enforced because it was "involuntary” (dissenting opn, at 647), we note only that the argument cannot be maintained in light of Gilmer v Interstate/Johnson Lane Corp. (supra), as well as Singer v Jefferies & Co. (supra) and Flanagan v Prudential-Bache Sec. (supra). In each of those cases, the arbitration agreement contained in the U-4 Form was enforced even though the agreement had been signed as a condition to becoming a registered representative and a refusal to sign would have meant "exclusion from the industry” (dissenting opn, at 647). Indeed, the dissent cannot seriously suggest that the various financial exchanges cannot enforce the thousands of U-4 Forms that have been signed by would-be registrants, since such a conclusion would destabilize long-standing practices in this highly regulated industry and would wreak havoc with the regulatory system.
Similarly, the concerns about the adequacy of the arbitral forum that plaintiffs and the dissent raise have already been considered, and presumably balanced, by the Congress that enacted the FAA and thereby expressed its own preference for enforcing the parties’ arbitration agreements. To the extent that the Supreme Court expressed a degree of mistrust for the arbitral process in Alexander v Gardner-Denver Co. (supra, at 57-58), that sentiment has clearly been supplanted by the more current view that arbitration is an important and respected method of resolving private disputes (see, Gilmer v Interstate/Johnson Lane Corp., 500 US, at —, n 5, 111 S Ct, at 1656, n 5, supra; see also, Shearson/Am. Express v McMahon, 482 US 220, 231-232). Indeed, as the Supreme Court noted in Rodriguez de Quijos v Shearson/Am. Express (490 US 477, 481), concerns about arbitration "as a method of weakening the protections afforded in the substantive law to would-be complainants” are "far out of step with [the] current strong endorsement [by the Federal courts] of the * * * statutes favoring this method of resolving disputes.” While the submis *636 sion of a dispute to arbitration inevitably does involve the loss of some procedural rights, a party who agrees to arbitration "trades th[ose] procedures and [the] opportunity for review * * * for the simplicity, informality, and expedition of arbitration” (Mitsubishi Motors v Soler Chrysler-Plymouth, supra, at 628). The value that expeditious resolution may have to a person deprived of his or her statutory rights is an element that the dissent’s discussion of the weakness of the arbitral forum completely overlooks.
Finally, we stress that there is no disagreement among the members of this Court about the general proposition that racial, gender, and all other forms of invidious discrimination, are ugly realities that cannot be countenanced and that should be redressable through the widest possible range of remedies (see, dissenting opn, at 647-648). However, the issue before us is not whether discrimination is a social evil that should be eradicated with whatever tools we have. Rather, the issue is whether, under existing precedent, the important public policies underlying title VII of the Federal Civil Rights Act may be deemed to override the " 'emphatic’ national policy favoring arbitration” (Singer v Jefferies & Co., supra, at 81, citing Moses H. Cone Hosp. v Mercury Constr. Corp., 460 US 1, 24-25), as reflected in the FAA. The Supreme Court has already ruled, in the context of an age-discrimination suit arising under the Age Discrimination in Employment Act (29 USC § 621 et seq.), that the proper question is not whether the courts can discern a sound reason in public policy to refuse enforcement of FAA-governed arbitration contracts, but rather whether Congress, in creating a statutory remedy, intended that arbitration of the statutorily established claim would be foreclosed (Gilmer v Interstate/Johnson Lane Corp., supra). The dissent has offered no principled reason to apply either a different analysis or a different remedy in cases in which the statutorily based claim involves discrimination on the basis of the claimant’s race rather than the claimant’s age, gender, religion or national origin.
III.
Having concluded that there is nothing in the language or history of the relevant Federal statutes to indicate a congressional intent to foreclose arbitration of race- and gender-discrimination claims, we turn now to the sole argument raised by the plaintiff in Reid: whether the arbitration clause in the *637 U-4 Form that she and many others in financial services industry have signed is an agreement governed by the FAA. The gist of the Reid plaintiffs argument is that the U-4 Form is, in essence, a contract of employment and that it is therefore within the exclusionary provisions of section 1 of the FAA (9 USC § 1). That section provides that the terms of the FAA, including its provisions for enforcement of arbitration agreements, do not "apply to contracts of employment of seamen, railroad employees, or any other class of workers.”
The Federal courts have debated the scope of this statutory exclusion. A majority of the lower Federal courts that have considered the issue have held that the exclusion is not limited to employment contracts of seamen, railroad employees and other classes of workers within the transportation industries, but rather extends to employment contracts in all industries (e.g., Willis v Dean Witter Reynolds, Inc., 948 F2d 305; Occidental Chem. Corp. v International Chem. Workers Union, 853 F2d 1310). Although the issue was raised and briefed by several of the amicus curiae in Gilmer v Interstate/ Johnson Lane Corp. (500 US, at —, n 2, 111 S Ct, at 1651-1652, n 2, supra), the Supreme Court declined to resolve it there. Indeed, the Gilmer Court concluded that resolving the question was unnecessary because the arbitration agreement before it, the plaintiffs U-4 Form application, was "a contract with the securities exchanges, not with [the plaintiffs employer]” and, thus, was not a "contract of employment” at all (id., 500 US, at —, n 2, 111 S Ct, at 1651-1652, n 2).
In view of this clear holding, the Reid plaintiffs present contention that the U-4 Form she signed was a "contract of employment” within the meaning of the section 1 exclusion cannot be maintained. Contrary to plaintiffs assertions on this appeal, the Supreme Court’s unambiguous statement rejecting the proposition she now advances cannot fairly be characterized as mere dictum, since that statement was essential to the Court’s ultimate holding. And, contrary to the dissent’s suggestion that the Gilmer holding "does not say that a U-4 Form can never be a part of an employment contract” (dissenting opn, at 643), the statement of the Gilmer Court on this issue was clear and unequivocal and was obviously intended to establish a principle of law that would extend to all cases involving U-4 Forms executed as part of an individual’s application for registration with a regulated exchange. Accordingly, any attempt to bring the standard U-4 Form application within the exclusion provided in section 1 of the FAA is *638 foreclosed by the Gilmer Court’s definitive rejection of that position.[5]
In sum, the arbitration agreement contained in the U-4 Form application that these plaintiffs signed is within the class of agreements that are governed by the FAA. Further, under the language of that statute as well as the recent decisional law construing it, that arbitration agreement is fully enforceable in disputes that fall within its terms, even where the underlying claim concerns an alleged breach of a local, State or Federal law barring racial or gender discrimination. While those categories of disputes undoubtedly implicate important public policies and, as such, demand heightened sensitivity in decision-making, there is no reason to assume that such sensitive decision-making cannot be had in the arbitral forum. Even more importantly, there is nothing in the present body of Federal law that supports carving out a special "public policy” exception from the general rule of arbitrability mandated by the FAA.
Accordingly, the orders of the Appellate Division in Fletcher v Kidder, Peabody & Co. and Reid v Goldman, Sachs & Co. should be affirmed, with costs.

. Under paragraph 5 of the U-4 Form he executed, plaintiff promised "to arbitrate any dispute, claim or controversy that may arise between [himself] and [his] firm * * * that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register.” Rule 347 of the Rules of the New York Stock Exchange requires arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative.”

. To the extent that the dissent’s argument is directed toward the wisdom of the United States Supreme Court’s recent pronouncements on the subject before us, its arguments are misdirected. In this area, which is governed by preemptive Federal statutes, the Supreme Court’s decisions are unquestionably the final word and, as such, are not subject to second-guessing at the State level.

. Similarly, the dissenter’s extensive reliance on the holding and rationale of Alexander v Gardner-Denver Co. (415 US 36, supra) is misplaced. While that case involved the arbitrability of a dispute arising under title VII, the arbitration agreement in issue was not one governed by the FAA (see, Gilmer v Interstate/Johnson Lane Corp., 500 US, at —, 111 S Ct, at 1657, supra), with its " 'liberal federal policy favoring arbitration’ ” (Mitsubishi Motors v Soler Chrysler-Plymouth, 473 US 614, 625). As the dissent itself acknowledges (dissenting opn, at 641). the Supreme Court made clear in Gilmer that Alexander is not relevant where the congressionally adopted FAA is controlling.

. For this reason, the dissent’s reliance on article I, § 11 of the State *633 Constitution and the antidiscrimination provisions of the State Human Rights Law (Executive Law § 290 [2]; §§ 291, 297 [9]; see, dissenting opn, at 645-646) is puzzling. No party to this litigation has suggested that the intentions of the New York State Legislature or the framers of the State Constitution should be consulted in resolving this question concerning the proper application of Federal law. Moreover, the State law that the dissent cites does not support the dissent’s primary contention that racial discrimination should be treated differently from other forms of discrimination for purposes of determining the proper remedial forum. Executive Law § 297 (9), which provides for a judicial cause of action for unlawful discrimination, does not distinguish between the various forms of discrimination and, in fact, treats racial discrimination the same way as it treats discrimination "because of age, * * * creed, color, national origin, sex [and] marital status” (see, id., § 291).

. The dissent’s suggestion that the issue is one that the Supreme Court has " Te[ft] for another day’ ” is simply inaccurate (see, dissenting opn, at 644 and 644, n 3). As it is quoted in the dissenting opinion itself, the Supreme Court’s opinion in Gilmer makes clear that the Court chose to "follow * * * the weight of authority, and * * * hold that § l’s exclusionary clause does not apply to” the U-4 Form used in the securities industry (500 US, at —, n 2, 111 S Ct, at 1651-1652, n 2 [emphasis supplied]). As previously noted, the question "le[ft] for another day” was not whether U-4 Forms are "contracts of employment” within the meaning of the section 1 exclusion from the FAA’s coverage, but whether the exclusion applies to all employment contracts rather than being limited to employment contracts in the transportation industry alone.