**UNITED STATES ex rel. Patricia S. MIKES and Patricia S. Mikes individually, Plaintiffs,**

v.

**Marc J. STRAUS, Jeffrey M. Ambinder and Eliot L. Friedman, Defendants.**

**No. 92 Civ. 2754 (VLB).**

United States District Court, S.D. New York.

May 26, 1994.

Kay K. Gardiner, Asst. U.S. Atty., New York City, for the U.S.

Harold Burke, Duel & Holland, Greenwich, CT, for plaintiff.

Mary Beth Kilgannon and Larry Lebowitz, Meiselman, Farber, Packman & Eberz, P.C., Mt. Kisco, NY, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case presents questions relating to the federal "Qui Tam" statute (31 U.S.C. § 3730). In particular the issues raise here include (1) the degree of specificity required for private suits against government contractors brought by current or former employees and similar parties where the United States has declined to proceed, and (2) the circumstances under which such "Qui Tam" suits can be combined with claims under state "whistleblower" protection provisions.

This suit was brought by plaintiff Patricia S. Mikes [1] under the federal Qui Tam statute (31 U.S.C. § 3730) against the defendant physicians by whom plaintiff had been employed, alleging that diagnostic tests paid for by Medicare were improperly conducted. Plaintiff also asserts that defendants have failed to pay withholding taxes, dismissed her for complaining about the improprieties, and owe her back wages.

■ The Qui Tam statute permits a party discovering fraud against the United States as defined in 31 U.S.C. § 3729 to bring the matter to the attention of the Attorney General, who may pursue a suit for the benefit of the United States, and alternatively, if the Attorney General declines, a private plaintiff may, as here, proceed. In *United States ex rel. Mikes v. Straus*, 846 F.Supp. 21 (S.D.N.Y.1994), defendants were given access to governmental progress reports concerning the case, which contained no confidential material requiring secrecy.

Defendants have moved to dismiss the complaint and for other relief. The motion to dismiss is granted without prejudice to the filing of an amended complaint within 45 days in accordance with this memorandum order should plaintiff elect to do so; this case will be dismissed upon the expiration of such period if no amended complaint is filed. Decision on defendants' other applications is reserved pending the filing of any amended complaint.

### II

■ Under Fed.R.Civ.P. 8(a) a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." While evidence need not be pleaded, sufficient specificity to show entitlement to relief if the assertions are proved is necessary. See *Volvo North America Corp. v. Men's International Tennis Council*, 857 F.2d 55 (2d Cir.1988); *Barnes Landfill v. Town of Highland*, 802 F.Supp. 1087 (S.D.N.Y.1992). Mere generalities are insufficient. See Marcus, "The Revival of Fact Pleading Under the Federal Rules of Civil Procedure," 86 Colum.L.Rev. 433 (1986).

■ Plaintiff suggests that these requirements be relaxed in the case of privately initiated Qui Tam suits for the benefit of the United States because of the importance of the objectives of the statute. These uniform standards, however, like other provisions of the Federal Rules of Civil Procedure apply to Qui Tam complaints, which must contain sufficient facts to make out a claim, particularly where information within the knowledge of a plaintiff is involved. *Cooper v. Blue Cross*, 19 F.3d 562 (11th Cir.1994).

■ These requirements are, indeed, applicable to all civil actions in the federal courts, *Leatherman v. Tarrant County*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and cannot be diluted because of the importance of any particular type of claim. Plaintiff's assertions that a more lenient standard of pleading should apply to private

---

1. Although Ms. Mikes sues in dual capacities, she is treated as a single plaintiff for purposes of this memorandum order.

Qui Tam suits than to other civil suits in federal court cannot survive *Leatherman,* which recognizes that all federal cases are important and must both be properly pleaded, and be permitted to proceed if a claim is stated.

Special pleading requirements for particular statutes would not only destroy the uniformity of the Federal Rules, which recognize that all federal lawsuits authorized by Congress are important, but create serious distortions within the domain of types of suits deemed especially important. The more important a societal objective the greater the risk that its invocation will become grounds for permitting abuse of procedures necessary to assure fairness to all involved in disputes related to such objectives.

Abuse of Medicare, Medicaid and similar funds by service providers is inherent in a third party payment system under which the recipients of the service have little or no incentive or ability to hold down costs and have difficulty in monitoring the quality of the service. See Rose–Ackerman, "Social Services and the Market," 83 Colum.L.Rev. 1405 (1983); Improper Practice, Commodity Import Program, U.S. Foreign Aid, Hearings before the Permanent Subcommittee on Investigations, Senate Committee on Government Operations, 90th Cong, 1st & 2d Sess (1967, 1968).

In the present instance, health and safety of Medicare patients as well as governmental monies are at stake. Thus, if plaintiff's assertions that defendants are ignoring risks of medically hazardous practices in their business have merit, it is imperative that corrective action be taken. At the same time, the provision of health services will also suffer if unfounded claims can be asserted leading to full litigation with its attendant costs and risks if no significant basis for the charges is articulated.

Fortunately, private Qui Tam lawsuits with their critical advantages and accompanying risks, while an important avenue for assuring rectitude in such matters, are not the only means of protecting the public. An additional safeguard against erecting an undue barrier against lawsuits aimed at abuse is provided by the fact that the United States must—

and here did—examine the plaintiff's claims initially and determine not to proceed before a private suit ensues.

This permits the court to apply standard, orthodox and uniform pleading requirements with respect to specificity without fear that, in doing so, risks to health or safety are ignored. It is thus important that Qui Tam suits be allowed to proceed where meritorious, and equally that they not be used to transmute employment disputes initiated for other reasons into daunting damage claims making it hazardous for an employer to exercise essential discipline required for a workplace to function. An adequately detailed complaint is an essential device for determining which characterization is most applicable to a case.

## III

Under Fed.R.Civ.P. 9(b), in "all averments of fraud," the "circumstances shall be stated with particularity." The core of plaintiff's complaint is contained in paragraph 9, which refers to "incomplete and inaccurate" lung function tests, without indicating in what respects the tests were incomplete or inaccurate, or the nature of any indications to that effect observed by plaintiff. It is asserted that spirometry was uniformly billed "in many cases [when] it was in fact not required," but no facts supporting this conclusory statement are provided. Plaintiff, while alleging that unnecessary tests were performed, states that "patients requiring comprehensive lung function tests were not referred out to other laboratories or physicians in order for these tests to be performed." No facts concerning what types of patients required such comprehensive tests is provided. Plaintiff states that spirometry was not properly conducted and proper calibration and other equipment was absent without setting forth what proper steps were not taken or what equipment was necessary and absent.

In order for an amended complaint with regard to these claims to survive, plaintiff must alleged facts, not conclusions. For one and only one example, if a patient with a given number of cubic centimeters of breath

output per breathing cycle requires or does not require a given type of testing which differs from what was provided, such facts and how defendants' practice differed from applicable norms must be set forth.

█ A plaintiff is not required to provide at the complaint stage information unavailable to the pleader, especially if in the exclusive possession of the adversary. See *Datskow v. Teledyne,* 899 F.2d 1298 (2d Cir.), *cert. denied* 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990); *Dayse v. Schuldt,* 894 F.2d 170, 173–74 (5th Cir.1990); see also *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 95 (2d Cir.1988).

█ Where technical matters raised, however, are necessarily within the scope of knowledge of a plaintiff, such facts as are available to the plaintiff must be set forth in order to permit the court to determine whether full litigation with its inherent costs is justified. This is particularly necessary in the context of Rule 9(b). See *Connecticut National Bank v. Fluor Corp,* 808 F.2d 957, 962 (2d Cir.1987); *Ross v. A.H. Robbins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

### IV

█ Plaintiff's complaint alleges that defendants failed to withhold required taxes and improperly treated personnel as independent contractors who should have been characterized as employees. The Qui Tam Act (31 U.S.C. § 3730) refers to the False Claims Act (31 U.S.C. § 3729) but not to the Internal Revenue Code in defining types of claims which can be raised under the Qui Tam provision. Such a clear statutory distinction cannot properly be ignored. See *Sea Robin Pipeline Co. v. F.E.R.C.,* 795 F.2d 182, 184 n. 1 (D.C.Cir.1986) (R. Ginsburg, J.).

The Internal Revenue Code (Title 26 of the United States Code) is an intricate statute of the type sometimes called "reticulated," containing separate remedies for violations,

many of them administrative and others confided to the judiciary under distinctive tax-specific provisions; indeed 26 U.S.C. § 7623 permits the IRS is permitted to pay informants for reporting tax frauds where appropriate. Government contract monitoring is an almost equally specialized field, covered in significant detail in Title 31 of the United States Code and elsewhere. Neither statute, of course, removes judicial jurisdiction over matters related to them, nor abrogates otherwise applicable laws or procedural rules except as specifically provided. See cases cited, *Pyramid Petroleum Corp v. United States,* 1994 WL 150811, 1994 US Dist LEXIS 5204 (S.D.N.Y. Apr. 20, 1994). The reticulated nature of such statutes warns, nevertheless, against ready cross-fertilization of provisions intended to be specialized, such as utilizing tax law to expand the Qui Tam Act or vice versa, where not intended by Congress.

This concern has a pragmatic basis: the intricacy of tax provisions, employing large numbers of governmental and private auditors and leading to many adjustments of disagreements annually, would permit almost any significant entity to become subject to Qui Tam suits were taxation swept into the orbit of the Qui Tam Act. This would give every employee enormous leverage against an employer where any financial aspect of its business—even if correctly conducted—might conceivably be challenged.[2]

If an amended complaint is filed, the claim that defendants filed to transmit tax funds to the United States must be deleted and that matter reported to the Internal Revenue Service, to permit it to determine what inquiries, if any, may be called for under the circumstances.

### V

█ Plaintiff's retaliation claim under 31 U.S.C. § 3730(h) fails to allege that plaintiff was terminated because of investigation or other steps in connection with pursuit of litigation under the False Claims Act, and

---

2. For similar reasons the New York State legislature in enacting its "whistleblower" protection statute, New York Labor Law 740, omits financial matters from its coverage entirely, limiting the statute to health and safety hazards. See *Remba v. Federation,* 76 N.Y.2d 801, 599 N.Y.S.2d 961, 559 N.E.2d 655 (1990).

contains no facts as opposed to conclusions to support allegations of harassment or termination. These shortfalls must be rectified if that claim is to be asserted in an amended complaint.

## VI

█ Plaintiff has filed a claim of discharge for reporting hazards to public health and safety in violation of New York's "whistleblower" Act, N.Y. Labor Law 740. Subsection 7 of that statute provides that:

> ... institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law.

That provision bars concurrent § 740 and other lawsuits based on the same circumstances. The purpose is to prevent § 740 from being used as an adjunct to other litigation. One need not invoke § 740, but if so, cannot pursue other remedies for the same wrongs. See *Gonzalez v. John T. Mather Memorial Hospital*, 147 Misc.2d 1082, 559 N.Y.S.2d 467 (Suffolk Co.1990); *McGrane v. Reader's Digest*, 1993 WL 525127, 1993 US Dist LEXIS 17790 (S.D.N.Y.1993); compare *Keene Corp. v. United States,* — U.S. —, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (bringing suit in another court bars resort to United States Court of Federal Claims under 28 U.S.C. § 1500).

Plaintiff makes a syllogistic argument playing upon the intricacies of our federal system of government, pointing out correctly that (a) under the Supremacy Clause, Article VI cl. 2 of the Constitution of the United States, a state law such as Labor Law 740 cannot bar resort to a federal statute such as the Qui Tam act,[3] and (b) neither the Qui Tam Act nor other federal law preempts such state statutes as Labor Law § 740. See *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

On the surface this argument may appear persuasive. It suffers, however, from the unarticulated assumption that each source of

law can be called upon only to limit the scope of other sources of law, and not to determine when it itself should be deemed limited by the existence of other remedies. This kind of assumption if permitted to pass unnoticed can lead to situations of the type described by F. Pollock in a letter to Justice Holmes in 1 *Holmes–Pollock Letters* 182 (Howe ed 1961) in which an argument lacks merit "but it is very difficult to prove it so in solemn didactic form." There is, however, no ground for accepting the assumption.

Plaintiff's argument if accepted would require the court to bypass the objective of Labor Law § 740(7), namely to avoid overlapping claims one of which is brought under § 740. That purpose should be achieved if possible. That objective was an important part of the grand equation bargained out by the New York Legislature in enacting the "whistleblower" statute. Protection was given to employees reporting health or safety hazards, but under subsection 5 only equitable relief made available. Under subsection 7, the statute cannot be used as an adjunct to lawsuits for damages based upon varying grounds under any legal theory, grounded upon claims that an adverse personnel action was improper. To permit the use of the "whistleblower" provision for such purposes notwithstanding subsection 7 would alter the critical balance among three vital interests: that of the public to avoid health and safety hazards, that of employees not to be unfairly treated because of relative lack of bargaining power in dealing with employers, and that of the public as well as employers and employees to see that economic activity can proceed without being hamstrung by abusive litigation. Proper interpretation of the statute must take each of these objectives fully into account.

As described by Justice (later Chief Justice) Harlan F. Stone in the context of a constitutional case:

> To decide, we turn to the words ... read in their historical setting as revealing the purposes of its framers, and search for admissible meanings of its words which, in the circumstances of their application, will effectuate those purposes.

---

**3.** See *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).

*United States v. Classic,* 313 U.S. 299, 317–18, 61 S.Ct. 1031, 1038–39, 85 L.Ed. 1368 (1941).

New York law is interpreted in the same vein. *Tedla v. Ellman,* 280 N.Y. 124, 19 N.E.2d 987 (1939). The goal sought by Labor Law 740(7) can in fact readily be achieved by holding § 740 preempted by resort to an overlapping federal claim *as a matter of state law under § 740 itself to that effect,* not as a matter of federal law under the Qui Tam Act.

■ There is a strong presumption that a state has the prerogative under both its own law and federal law to stand aside where federal law is invoked, so as to avoid overlapping litigation if it wishes to do so—as it has through the language of § 740(7). See generally *Leaman v. Ohio,* 825 F.2d 946 (6th Cir.1987) (en banc), *cert. denied* 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 882 (1988). This is also in accord with the goals set forth in N.Y. State Administrative Procedure Act 206, seeking to avoid unnecessary overlapping regulation at differing levels of government. Avoidance of overlapping suits is also in accord with the objectives of Fed.R.Civ.P. 1, recently given additional significance by the 1993 amendments which require that federal procedural rules be "administered" as well as "construed" to further the "just, speedy and inexpensive" determination of every action.

Were a state to purport to require waiver of federal constitutional rights as a precondition to asserting a state law claim, analysis of whether this would defeat the purposes of the federal constitutional provision would be necessary. See *Majer v. MTA,* 1992 WL 110995, 1992 US Dist LEXIS 6239 (S.D.N.Y. 1992); Sullivan, "Unconstitutional Conditions," 102 Harv.L.Rev. 1415 (May 1989). Similarly, were a state to condition access to state law claims upon waiver of rights under a federal statute, this would be equally prohibited were the state action to "undercut" the objectives of the federal law. *Ft. Halifax*

*Packing Co v. Coyne,* 482 U.S. 1, 20, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987). State action is not permitted to cause "interference with policies implicated by the structure" of federal statutes. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985). There is no such interference here, inasmuch as the Qui Tam Act contains its own anti-retaliation provision, indeed sought to be invoked in the present suit.[4]

For these reasons, Labor Law 740 and Qui Tam claims arising out of the same occurrences (compare Fed.R.Civ.P. 13) are incompatible.

### VII

■ Because plaintiff correctly points out that New York Labor Law 740(7) cannot preempt a federal Qui Tam suit, reliance on Labor Law 740 in plaintiff's original complaint does not bar repleading of the Qui Tam claim. Under such circumstances, the incompatibility of Qui Tam Act and New York State "whistleblower" claims would ordinarily permit plaintiff to elect which to retain were an amended complaint filed. In the present instance, however, only plaintiff's Qui Tam and related retaliation claims constitute federal claims within the original jurisdiction of the court under 28 USC 1331. Were those claims dropped, there would be no federal lawsuit which would make it appropriate to retain pendent state claims under 28 U.S.C. § 1367(c)(3).

■ It is thus impossible for plaintiff's Labor Law 740 claim to be pursued in this case; it cannot be included in any amended complaint, but dismissal of plaintiff's Labor Law 740 claim is based solely on the procedural grounds described above and not on the merits, if any, of the § 740 claim. Consequently, dismissal of plaintiff's New York Labor Law 740 claim is without prejudice to any state court suit were plaintiff to elect to proceed under § 740 in state court in lieu of

---

4. Further, the New York "whistleblower" protection statute provides only limited relief under restricted circumstances. See N.Y. Labor Law 740(5); *Scaduto v. Restaurant Associates,* 180 A.D.2d 458, 579 N.Y.S.2d 381 (1st Dept.1992).

There is no reason to assume that a state law rule preventing pursuit of the state provision in tandem with private Qui Tam suits would be unlikely to interfere with the objectives of the latter.

pursuing the inconsistent Qui Tam claim in this court through an amended complaint.[5]

## VIII

 Plaintiff's claim for unpaid wages, like the Labor Law 740 claim, is a pendent state claim, but unlike the § 740 claim is not incompatible with plaintiff's Qui Tam claim. Dismissal of that claim here is based solely on the inappropriateness of retaining it were plaintiff's federal claims under the Qui Tam Act not effectively repleaded.

Plaintiff's unpaid wages claim be included in an amended complaint if filed. Further, since dismissal of that claim is not on the merits, if the unpaid wages claim is not reasserted here, it may be raised in any appropriate state court action.

SO ORDERED.

---

**5.** Plaintiff's claim under N.Y. Labor Law 740 is also deficient because it fails to specify any law or regulation alleged to have been violated in connection with the health or safety hazard claimed.

No such infraction is specified in the current complaint, perhaps on the assumption that fraud on a party paying for services (in this instance the United States) constitutes an adequate violation. Such an assumption might arguably have merit on the ground that fraud is obviously illegal under numerous sources of law, and almost by definition a significant public health or safety hazard will violate some legal norm. The tenor of numerous comments in the legislative history compiled in the Bill Jacket for Labor Law 740, maintained in the Governor's Counsel's office, tends to confirm that it was presumed that the statute would effectively protect reporting of any significant hazard to health or safety.

Like other assumptions, this one may be dangerous if unarticulated and hence not given a clear definition of its scope and inherent limits. Such limits may, like the Qui Tam statute, impose a necessity for reasonable specificity at least as to information available to the pleader before a lawsuit can proceed.