**UNITED STATES ex rel. Patricia S. MIKES and Patricia S. Mikes, Individually, Plaintiffs,**

v.

**Marc STRAUS, Jeffrey M. Ambinder and Eliot L. Friedman, Defendants.**

No. 92 Civ. 2754(WCC).

United States District Court, S.D. New York.

Sept. 22, 1995.

Holland Kaufmann & Bartels, Greenwich, CT (Harold R. Burke, of counsel), for plaintiffs.

Meiselman, Farber, Packman & Eberz, P.C., Mount Kisco, N.Y. (Mary Beth Kilgannon, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Patricia S. Mikes brings this action on behalf of the United States and herself against her former employers under the *qui tam* provisions of the False Claims Act (the "FCA"), 31 U.S.C. § 3730, for alleged improper billing of medical procedures to the United States and for retaliatory discharge, and under New York Labor Law § 191 for unpaid wages for a two-week period of employment after her formal termination. In a prior opinion we denied defendants' motion to dismiss, converted by the Court *sua sponte* into a motion for summary judgment, but granted defendants' motion to compel arbitration of plaintiff's retaliatory discharge and § 191 claims in light of an arbitration clause contained in plaintiff's employment contract with defendants. Plaintiff now moves this Court to reconsider our order compelling arbitration of her retaliatory discharge claim brought under 31 U.S.C. § 3730(h). For the reasons stated below, we deny plaintiff's motion.

## DISCUSSION

The facts in this case are fully articulated in our prior opinion and need not be repeated here. *See Mikes v. Strauss,* 889 F.Supp. 746 (S.D.N.Y.1995). In seeking reconsideration, plaintiff asserts that we erroneously relied on the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–307, as dictating the arbitrability of her § 3730(h) claim. Instead, plaintiff argues that New York arbitration law controls and that it does not permit submission of the instant federal statutory claim to arbitration. We will address both of these contentions below.

### A. The Federal Arbitration Act

In distinguishing the FAA's coverage from the instant dispute, plaintiff relies on two of its provisions. First, plaintiff claims that her prior employment with defendants was not "a transaction involving commerce" within the meaning of § 2 of the FAA. That section provides:

A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, … shall be valid….

9 U.S.C. § 2. Section 1 of the Act defines commerce as "commerce among the several States or with foreign nations…." 9 U.S.C. § 1.

The Supreme Court has held that the scope of the "involving commerce" requirement, and hence the coverage of the Act, extends to the limits of Congress' Commerce Clause power. *Allied–Bruce Terminix Cos. v. Dobson,* —— U.S. ——, ——, 115 S.Ct. 834, 836, 130 L.Ed.2d 753 (1995). However, plaintiff urges that because she was required to maintain admitting privileges only in New York, defendants' offices were located in New York, and a restrictive covenant contained in the employment agreement precluding her from competing with defendants extended only to designated areas within New York, the contract did not involve interstate commerce. Therefore, she asserts, the FAA does not govern the arbitrability of her retaliatory discharge claim.

Second, plaintiff contends that the explicit language in § 1 of the Act excluding "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from its coverage exempts the arbitration clause contained in her employment contract from enforcement under the FAA. 9 U.S.C. § 1. Plaintiff points out that in a case that we cited in our prior opinion as supporting arbitration of her retaliatory discharge claim, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court specifically declined to decide whether § 1 excluded employment contracts from its coverage. *Id.* at 25 n. 2, 111 S.Ct. at 1651 n. 2. On the other hand, in light of the FAA's legislative history and a more recent, arguably expansive reading of the clause by the Supreme Court in *United Paperworkers Int'l Union, AFL–CIO v. Misco,* 484 U.S. 29, 40 n. 9, 108 S.Ct. 364,

372 n. 9, 98 L.Ed.2d 286 (1987), plaintiff argues that its plain language precludes application of the Act in the instant case.

At the outset, we note that plaintiff did not raise either of these arguments in response to defendants' motion to compel arbitration. While this oversight could be considered fatal to her plea for reconsideration, and indeed defendants so argue, even if we were to agree with plaintiff that the FAA does not control arbitrability on the instant facts and instead state law applies, our result would not change. Therefore, while we consider plaintiff's arguments articulated above, we need not address their merits.

## B.   New York Arbitration Law

█  Even assuming *arguendo* that New York law, rather than the FAA, controls the arbitrability of plaintiff's retaliatory discharge claim, our order compelling arbitration would not change.[1] While historically the New York courts have been reluctant to enforce arbitration clauses, *see Meacham v. Jamestown, Franklyn & Clearfield R.R. Co.,* 211 N.Y. 346, 354, 105 N.E. 653, 656 (1914) (Cardozo J., concurring), the modern view recognizes arbitration as an "effective and expeditious means of resolving disputes between willing parties desirous of avoiding expense and delay frequently attendant to the judicial process." *Maross Constr., Inc. v. Cent. New York Regional Transp. Auth.,* 66 N.Y.2d 341, 345, 497 N.Y.S.2d 321, 323, 488 N.E.2d 67, 69 (1985). When no conflict with law or public policy exists, the New York courts will enforce the parties' contractual decision to submit their disputes to arbitration. *Id.* at 346, 497 N.Y.S.2d at 324, 488 N.E.2d at 70. Moreover, courts will give full effect to broadly worded contractual provisions expressly calling for arbitration of all disputes arising out of the parties' contract. *Id.* (citing numerous cases).

Plaintiff argues that § 3730(h) evidences a strong public policy against being "discharged, demoted, suspended, threatened,

harassed or in any other matter discriminated against … by his or her employer because of lawful acts done by an employee … in furtherance of an action under [31 U.S.C. § 3730]," which can be vindicated only in a judicial forum. *See* 31 U.S.C. § 3730(h). In particular, plaintiff analogizes her § 3730(h) claim to *Harris v. Iannaccone,* 107 A.D.2d 429, 487 N.Y.S.2d 562, *aff'd,* 66 N.Y.2d 728, 496 N.Y.S.2d 998, 487 N.E.2d 908 (1985), which held that charges of discrimination must be aired in a judicial forum in light of the attendant public policy surrounding such suits. *Id.,* 107 A.D.2d at 431, 487 N.Y.S.2d at 564 (citing *Matter of Wertheim & Co. v. Halpert,* 48 N.Y.2d 681, 683, 421 N.Y.S.2d 876, 877, 397 N.E.2d 386, 387 (1979)).

█  Generally, this Court will look first to decisions of the New York Court of Appeals to ascertain and interpret controlling New York law. *Gonzalez v. Rutherford Corp.,* 881 F.Supp. 829, 834 (E.D.N.Y.1995). Absent a plain ruling by the state's highest court, the rulings of the intermediate courts "are entitled to persuasive, if not decisive consideration." *Sphere Drake Ins. Co. v. P.B.L. Entertainment, Inc.,* 30 F.3d 21, 23 (2d Cir.1994), *vacated on other grounds,* 52 F.3d 22 (2d Cir.1995) (citation omitted). On the other hand, when appellate division decisions do not speak unequivocally to the facts at issue, a federal court must "endeavor to predict how the highest court of the state" would resolve the issue. *U.S. East Telecommunications, Inc. v. U.S. West Communications Services, Inc.,* 38 F.3d 1289, 1296 (2d Cir.1994).

Here, the parties have cited no New York decisional law regarding the arbitrability of retaliatory discharge claims, and we have been unable to find any. We do note, however, that at least until the Court of Appeals' ruling in *Fletcher v. Kidder, Peabody & Co.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998, *cert. denied,* —— U.S. ——, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993), New York law

---

**1.**  The parties implicitly assume, and we agree, that if the FAA does not cover the instant contract to arbitrate, we should look to New York law in assessing the arbitrability of plaintiff's claims. *See Bridas Sociedad Anonima Petrolera*

*Industrial Y Commercial v. Int'l Standard Elec. Corp.,* 128 Misc.2d 669, 673, 490 N.Y.S.2d 711, 715 (N.Y.Sup.Ct.1985); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

prevented arbitration of discrimination claims.[2] Therefore, in resolving the instant issue, we must "endeavor to predict" how the Court of Appeals would rule given the instant facts.

While recognizing certain "public policy" exceptions to blind enforcement of arbitration provisions, the Court of Appeals has cautioned against expanding those exceptions to swallow the rule. As the court stated:

> The courts ... must exercise due restraint in this regard, for the preservation of the arbitration process and the policy of allowing parties to choose a nonjudicial forum, embedded in freedom to contract principles, must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on its merits, for arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations. Thus, there are now but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to ... place them beyond the bounds of the arbitration process....

*Matter of Sprinzen v. Nomberg,* 46 N.Y.2d 623, 630, 415 N.Y.S.2d 974, 977, 389 N.E.2d 456, 459 (1979). The court articulated the appropriate test for assessing the arbitrability of a claim as whether public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters from being decided or certain relief from being granted by an arbitrator. *Id.* at 631, 415 N.Y.S.2d at 978, 389 N.E.2d at 460. In applying this test, courts must be able to examine an arbitration agreement on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement. *Id.*

■ Under this standard, New York courts have forbidden arbitration of suits involving the right to inspect teacher personnel files, *Bd. of Educ. Great Neck Union Free Sch. Dist. v. Areman,* 41 N.Y.2d 527, 394 N.Y.S.2d 143, 362 N.E.2d 943 (1977), enforcement of state antitrust laws, *Matter of Aimcee Wholesale Corp. v. Tomar Prods., Inc.,* 21 N.Y.2d 621, 289 N.Y.S.2d 968, 237 N.E.2d

223 (1968), disqualification of an attorney from representing a particular party, *Bidermann Indus. Licensing v. Avmar N.V.,* 173 A.D.2d 401, 570 N.Y.S.2d 33 (1991), usury claims asserted by borrowers, *Durst v. Abrash,* 22 A.D.2d 39, 253 N.Y.S.2d 351 (N.Y.App.Div.1964), *aff'd,* 17 N.Y.2d 445, 266 N.Y.S.2d 806, 213 N.E.2d 887 (1965), and custody of and visitation rights with children, *Glauber v. Glauber,* 192 A.D.2d 94, 97–98, 600 N.Y.S.2d 740, 742–43 (1993).

The instant case does not fall within this class of cases for at least three reasons. First, even if the FAA does not apply to the parties' arbitration agreement, given that plaintiff's retaliatory discharge claim arises under federal law, we do not think that FAA jurisprudence should be totally ignored. It would be illogical for a New York court to rely on a public policy reflected in a federal law to prevent arbitration of a federal right when federal arbitrational law, were it to apply, would sanction such arbitration. Therefore, when only federally recognized public policies are at issue, we think it is appropriate to examine arbitrability with reference, at least in part, to federal arbitrational law.

■ As we articulated in our prior opinion, under federal arbitration law, the parties generally are be bound by an agreement to arbitrate unless "Congress itself has evidenced an intention to preclude a waiver of judicial remedies...." *Mikes,* 889 F.Supp. at 755 (citing *Gilmer,* 500 U.S. at 25, 111 S.Ct. at 1651). Here, there is no evidence that Congress intended to preclude arbitration of the instant dispute. *Id.*

Second, this case is readily distinguishable from *Matter of Wertheim,* the case on which *Harris* relies. In that case the Court of Appeals declined to compel arbitration of a state law discrimination claim in light of the remedy scheme provided by State and Federal Statutes. The court determined that ordering arbitration would abrogate a plaintiff's right to take advantage of this scheme and undermine the policy behind offering multiple forums to eradicate unlawful dis-

---

**2.** In that case, the Court of Appeals held that discrimination claims were amenable to arbitration under the FAA. While recognizing the long-standing prohibition under New York law, the court did not address its continued viability outside the context of the FAA. *Fletcher,* 81 N.Y.2d at 629, 601 N.Y.S.2d at 688, 619 N.E.2d at 1000.

crimination. *Matter of Wertheim,* 48 N.Y.2d at 683, 421 N.Y.S.2d at 877, 397 N.E.2d at 387. Unlike a claim for discrimination, here there is no state law system or policy for protecting plaintiff.[3] Plaintiff's rights are created solely by federal law. Therefore, there is no danger of inconsistent verdicts or abrogation of a remedial scheme that the *Wertheim* court foresaw by ordering arbitration in the discrimination arena. *See id.*

Finally, we are guided by the Court of Appeals' cautionary approach articulated in *Matter of Sprinzen,* 46 N.Y.2d at 630, 415 N.Y.S.2d at 977, 389 N.E.2d at 459. Every statutory right reflects a public policy behind that right. In light of this, we are reluctant to expand the New York public policy exception to arbitration absent clear guidance from the New York courts in doing so. The public policy exception was not intended to reach every statutory claim, only those which could not be arbitrated without contravening the policy which underlies the law. Plaintiff does not assert that any "policy" embodied in § 3730(h), would be subverted by submission of such a claim to an arbitrator.[4]

### CONCLUSION

Because we find that New York arbitration law does not prevent resolution of plaintiff's retaliatory discharge claim in an arbitral forum, her plea for reconsideration is without merit. Therefore, plaintiff's motion for reconsideration is denied.

**SO ORDERED.**

---

3. Plaintiff had initially sued under New York's "whistleblower" Act, N.Y. Labor Law § 740, which prohibits discharging an employee in retaliation for reporting health or safety hazards. Judge Broderick dismissed that claim as being incompatible with a suit based on § 3730(h). *United States ex rel. Mikes v. Straus,* 853 F.Supp. 115, 120–21 (S.D.N.Y.1994). This ruling bolsters our conclusion that there are no overlapping state and federal schemes for redressing plaintiff's claimed damages.

4. Plaintiff does assert that the potential award of two times the amount of back pay for a violation of § 3730(h) expresses a strong public policy behind the law. We do not agree. Indeed, the Supreme Court, albeit interpreting the FAA, has rejected a similar argument in allowing arbitration of federal antitrust claims, which potentially yield treble damage awards. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.,* 473 U.S. 614, 635, 105 S.Ct. 3346, 3358, 87 L.Ed.2d 444 (1985). While not controlling under our assumption that New York law, rather than the FAA, applies in this case, we find the reasoning of that opinion persuasive and equally applicable to the instant facts. The double damage provision of § 3730(h), although serving ancillary policing goals, is primarily remedial in nature. Moreover, plaintiff has made no showing that the public policy goals will be undermined unless a judicial forum is made available for the vindication of her rights.