**UNIVERSAL ACUPUNCTURE PAIN SERVICES, P.C., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**State Farm Mutual Automobile Insurance Company, Counter–Plaintiff,**

v.

**Universal Acupuncture Pain Services, P.C., Dipak Nandi, and Dongxing Sun, Counter–Defendants.**

No. 01 Civ. 7677(SAS).

United States District Court, S.D. New York.

March 18, 2002.

Richard J. Quadrino, Evan S. Schwartz, Jason A. Newfield, Quadrino & Schwartz P.C., Garden City, NY, for Plaintiff/Counterdefendant and Third Party Defendant Nandi.

Dongxing Sun, Rego Park, NY, for Third Party Defendant Sun, Pro Se.

Ted S. Helwig, Ross O. Silverman, Gil M. Soffer, Katten Muchin Zavis, Chicago, IL, Craig J. Bruno, Bruno, Gerbino & Macchia LLP, Melville, NY, for Defendant/Counterplaintiff.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Universal Acupuncture Pain Services P.C. ("Universal") is suing defendant State Farm Mutual Automobile Insurance Company ("State Farm") for payment of overdue claims.[1] State Farm has asserted counterclaims against Universal and third-party defendants, Dipak Nandi (the founder of Universal) and Dongxing Sun, a licensed acupuncturist. The counterclaims allege (1) that State Farm is entitled to a judgment declaring that it and its insureds are not obligated to pay for services rendered by Universal, and enjoining Universal from submitting to State Farm any request for payment for acupuncture services rendered before April 24, 2001 ("Counterclaim I"); (2) fraud in the corporate form ("Counterclaim II"); (3) unjust enrichment premised on fraud in the corporate form ("Counterclaim III"); (4) fraud concerning acupuncture services never rendered and not medically necessary ("Counterclaim IV"); and (5) unjust enrichment premised on fraudulent billing for services never rendered ("Counterclaim V"), and seek compensatory and punitive damages. See Second Amended Answer and Counterclaim ("Counterclaim"). Universal, Nandi and Sun[2] (collectively, "plaintiff") now move to dismiss all counterclaims pursuant to Rule 12(b)(6) for failure to state a cause of action, and Rule 9(b) for failure to plead fraud with particularity.

For the reasons stated below, plaintiff's motion is granted in part and denied in part.

## I. BACKGROUND

The following facts, drawn from the Counterclaim, are assumed true for the purposes of this motion.

### A. Urban Medical and Other Professional Corporations Formed by Nandi

Between 1996 and 1998, Nandi, a physician licensed in the State of New York, obtained certificates of authority from the

---

1. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

2. Dongxing Sun was served with State Farm's Counterclaims on February 9, 2002, and joined the motion to dismiss, *pro se*, on February 28, 2002. See 2/28/02 Dongxing Sun Notice of Motion to Join Motion to Dismiss.

New York Department of Education ("DOE") to form several professional services corporations: Urban Medical Diagnostics ("Urban Medical"), Millennium Diagnostics P.C., Sterling Medical Diagnostic P.C., and Triborough Medical Diagnostics P.C. (collectively, "other PCs"). *See* Counterclaim ¶ 19. Because New York law only allows a professional services organization to incorporate if it possesses a certificate stating that it is owned and operated by one or more licensed physicians who are either shareholders or practice medicine or both, Nandi falsely represented to the licensing authority that Dr. Robert Mallela, a licensed physician in New York, would be the sole shareholder, director and officer of each of the corporations. *See id.* Although Urban Medical and the other PCs were controlled by Nandi, he told the DOE that Mallela would own, control and practice medicine through the PCs. *See id.* Dr. Mallela has since admitted the following facts: (1) he had no true ownership interest in or control over Urban Medical, or any of the other three other PCs; (2) he never paid for the shares in Urban Medical or the other PCs he was given, (3) he was paid a fee to allow Nandi to use his name to obtain a certificate of authority from the DOE; (4) he did not manage or supervise the medical practice at Urban Medical or the other PCs, and (5) he never saw or treated patients for Urban Medical or the other PCs. *See id.* ¶ 20 (citing Mallela Affidavit, Ex. C to Counterclaim).

Beginning in July 1999 and continuing through early 2000, State Farm requested information from Urban Medical regarding the validity of its charges and the identity of the individuals who State Farm believed "truly owned and controlled the practice."

*Id.* ¶ 23. Nandi never responded to the requests. *See id.* Because Urban Medical refused to provide such information, State Farm stopped paying the company's bills. *See id.*

### B. Formation of Universal

On January 27, 2000, Nandi formed Universal which was essentially the same company as Urban Medical but with a different name. *See id.* ¶¶ 24, 26.[3] Universal immediately began submitting bills to State Farm for acupuncture services. *See id.* ¶¶ 24, 29. On February 9, 2000, Universal obtained a certificate of authority from the DOE to incorporate an acupuncture services corporation by falsely representing that Dongxing Sun, a licensed acupuncturist in New York, was its sole shareholder, director and officer. *See id.* ¶ 25. From January 2000 to April 24, 2001, Nandi ran Universal under Sun's name, all the while splitting fees with Sun. *See id.* ¶¶ 6, 17. Because he had obtained a certificate of authority for Universal, Nandi could use Universal to employ licensed and certified acupuncturists, control their practices, and submit bills to State Farm. *See id.* ¶¶ 17, 31. Nandi did not receive his license to practice acupuncture in New York until April 24, 2001; only then was he licensed to own and operate an acupuncture professional services corporation in New York. *See id.* ¶ 30.

Sun admittedly did not operate Universal or control the corporation in any way. He "permitted Nandi to 'handle the affairs of' Universal and 'accepted his word for everything,'" and had "'no idea what the business activity' of Universal was before his dispute erupted with Nandi over ownership and control." *Id.* ¶ 28 (quoting un-

---

**3.** State Farm alleges that Universal and Urban Medical were the same corporation because they treated at least fifty-seven of the same patients, had the same office manager, Anil Mehandru, shared a post office box, and employed the same law firm. *See* Counterclaim ¶ 26.

attached Affidavit of Dongxing Sun from July 2001 state court action involving Nandi and Sun).

### C. Treatment, Assignment, and Billing

On various occasions from February 2000 to the present, Universal provided acupuncture services to individuals who had sustained car-related injuries (the "assignors" or "insureds"). *See* Plaintiff's Complaint ¶ 5. Universal also falsified records to indicate that it had provided acupuncture treatment to many more patients than its staff had actually treated. *See* Counterclaim ¶¶ 37–8. The services that Universal did provide were performed by Universal's staff of acupuncturists, all of whom are either licensed or certified. *See id.* ¶ 38.

The insureds treated by Universal purportedly assigned their right to no fault benefits to Universal. *See id.* ¶ 31. Universal, as assignee, submitted claims for acupuncture services to State Farm. *See id.* ¶ 8. In fact, no patient who received acupuncture services from Universal ever sought reimbursement directly from State Farm. *See id.* ¶ 34. State Farm has not paid many of the bills, although it has paid Universal over $190,000 in no fault insurance benefits that Universal claims were assigned to it by State Farm's insureds. *See id.* ¶¶ 34, 54.

## II. LEGAL STANDARD

A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (quotation marks and citation omitted). "At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (quotation marks omitted)). The task of the court in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Sims*, 230 F.3d at 20 (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (quotation marks omitted)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "take as true all of the allegations contained in [counterplaintiff's counterclaim] and draw all inferences in favor of [counter]plaintiff." *Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir.2001). Courts should "include in this analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Here, plaintiff moves to dismiss all of the defendant's counterclaims. Thus, the Court will accept as true all facts alleged by the nonmoving party, defendant (counter-plaintiff) State Farm.

## III. DISCUSSION

The crux of State Farm's argument is that it is not obligated to pay Universal because Universal fraudulently obtained the licenses and certificates required under New York law and therefore any treatment rendered by Universal was unauthorized. In addition, State Farm seeks compensatory and punitive damages from Universal for violations of New York law and for common law fraud.

### A. Relevant State Law

New York permits licensed professionals to incorporate if they are the sole organiz-

ers, owners and operators of the corporation. *See* N.Y. Bus. Corp. Law ("BCL") §§ 1503(a),(b), 1508.[4] To incorporate, the licensed individual(s) must obtain a "certificate . . . issued by the [DOE] certifying that each of the proposed shareholders, directors and officers is authorized by law to practice a profession which the corporation is being organized to practice." *Id.* at § 1503(b).[5] The DOE may not issue a certificate of authority to a professional service corporation that does not meet these qualifications. *See* N.Y. Educ. Law § 6507(4)(c)(i).[6] Once the PC is formed, shareholders may not transfer their voting power to any person who is not a licensed professional in the field. *See* N.Y. BCL § 1507. The parties agree that Universal is a PC in the business of providing acupuncture services and that it is subject to New York's Business Corporation Law. Accordingly, Universal may be organized, owned and operated only by New York state-licensed acupuncturists. Because Universal fraudulently obtained a certificate from the DOE that each of its directors, shareholders and officers was a licensed acupuncturist, it is not a state-licensed professional corporation. *See*

N.Y. BCL § 1503(b); N.Y. Educ. Law § 6507(4).

Under New York's Comprehensive Motor Vehicle Insurance Reparation Act ("no fault law" or "no fault"), State Farm is required to indemnify all covered persons (the "insureds") for reasonable and necessary medical services. *See* N.Y. Ins. Law §§ 5102, 5104. Insureds are entitled to reimbursement for *"basic economic loss* on account of personal injury arising out of the use or operation of a [covered] motor vehicle." *Id.* at § 5102(b)(emphasis added). Economic loss is defined to include "all necessary expenses incurred for . . . [many types of medical treatment and] (iv) any other professional health services." *Id.* at § 5102(a). "Any other professional health services" is "limited to those services that are required or would be required to be licensed by the state of New York if performed within the state of New York. Such professional health services must be necessary for the treatment of injuries sustained and within the lawful scope of the licensee's practice." 11 New York Codes, Rules and Regulations ("NYCRR") § 65.15(*o*)(iv). The parties agree that the cost of acupuncture services for the treatment of motor vehicle accident

---

4. Specifically, "[n]o individual may be a director or officer of a professional services corporation unless he [or she] is authorized to practice in this state a profession which such [PC] is authorized to practice and is either a shareholder of such [PC] or engaged in the practice of his [or her] profession in such [PC]." N.Y. BCL § 1508.

5. These requirements are in keeping with the longstanding ban on the corporate practice of medicine. *See* Alice A. Noble & Troyen Brennan, *Managing Care in the New Era of "Systems–Think"*, 29 J.L. Med. & Ethics 290, 294 (2001). *But see* George C. Harris & Derek F. Foran, *The Ethics of Middle–Class Access to Legal Services and What We Can Learn from the Medical Professions' Shift to a Corporate Paradigm*, 70 Fordham L.Rev. 775, 814 (2001)(arguing that the corporate practice

ban is largely "moribund" as legislators have come to realize the necessity and advantages of allowing delivery of health care to enter the "competitive marketplace"). A conflict of interest may exist where health care professionals are employed by unlicensed corporations or unlicensed individuals. *See* Noble et al. at 294. As a result, under- or over-treatment may result. *See* E *& B Mktg. Enter. Inc. v. Ryan*, 209 Ill.App.3d 626, 154 Ill.Dec. 339 (1991).

6. New York provides that it is professional misconduct for any professional to fraudulently procure a license from the DOE. *See* N.Y. Educ. Law §§ 6509, 6530(1). The definition of professional misconduct also includes the filing of a false report with the DOE. *See id.* § 6530(21).

victims is "economic loss" under the statute, but disagree as to whether acupuncture services rendered by an *unlicensed* professional corporation qualifies as economic loss.

Following treatment, an insured may either pay the bill herself and seek no fault benefits directly from her insurer, or assign her right to no fault benefits to a health care provider who must apply to the insurer for the benefits. *See id.* § 65.15(j)(1). The insurer "upon assignment by the applicant ... shall pay the providers of services ... directly." *Id.* No provision of no fault law, including that directly related to assignment of benefits specifically requires that the assignee of benefits be state-licensed in order to collect from the insurer. *See* N.Y. Ins. Law § 5102; 11 NYCRR § 65.15(j)(1).

## B. Counterclaim I—Declaratory and Injunctive Relief

State Farm seeks a judgment declaring that neither State Farm nor the patients who received acupuncture services are obligated to pay for such services because: (1) Universal fraudulently obtained its certificate of authority and failed to adhere to New York laws governing its authority to provide the services; (2) the services were rendered outside the lawful scope of the practices of the licensed or certified acupuncturists who purportedly rendered them; (3) the charges submitted by Nandi in the name of Universal were not authorized under the Fee Schedules; and (4) the charges submitted by Nandi in the name of Universal were void, illegal, against public policy, unenforceable and noncompensable under New York law generally and the no fault laws. *See* Counterclaim ¶ 49(a)("Counterclaim I"). State Farm

also seeks to enjoin Universal from submitting any unlawful request for payment for any acupuncture service rendered before April 24, 2001, and from initiating or prosecuting any other legal proceedings against State Farm including arbitration proceedings. *See id.* ¶ 49(b)(also "Counterclaim I"). Plaintiff argues that State Farm is obligated to satisfy the no fault claims presented to it by Universal because its status as an assignee of State Farm's insureds is unaffected by its corporate structure.

### 1. Declaratory Relief (Illegality Defense)

■ Declaratory relief is appropriate "(i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Maryland Casualty Co. v. Rosen,* 445 F.2d 1012, 1014 (2d Cir. 1971). *See also* 28 U.S.C. § 2201; *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,* 241 F.3d 154, 175 (2d Cir.2001). A court has broad discretion to decide whether to render a declaratory judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1100 (2d Cir.1993). In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. *See NAP, Inc. v. Shuttletex, Inc.,* 112 F.Supp.2d 369, 372 (S.D.N.Y.2000).

Here, New York law is clearly unsettled. Several recent decisions of New York's lower courts have held that an insurer has no obligation to pay no fault benefits for services performed by an unlawfully incorporated health care provider.[7] *See State*

---

**7.** A federal court interpreting New York state law must accord the "rulings of the intermediate courts ... persuasive, if not decisive consideration." *United States ex rel. Mikes v.*

*Straus,* 897 F.Supp. 805, 807 (S.D.N.Y.1995). Where "appellate division decisions do not speak unequivocally to the facts at issue, a federal court must endeavor to predict how

*Farm Ins. Co. v. North Bronx Medical P.C.,* Index No. 117539/01, at *2 (Sup.Ct. N.Y.Co. Jan. 17, 2002)(Wetzel, J.), Ex. C–39 to Appendix to Defendant's Opposition to Plaintiff's Motion to Dismiss ("Def.Opp."); *Millennium Med. Diagnostics v. Nat'l Grange Mut. Ins. Co.,* Index No. 44600/00 (Sup.Ct. Queens Co. Sept. 14, 2001), Ex. C–34 to Appendix to Def. Opp.; *see also Fordham Med. Pain & Treatment, P.C. v. State Farm,* Index No. 600403/00, at *3 (Sup.Ct.N.Y.Co. Jan. 4, 2001), Ex. C–33 to Appendix to Def. Opp. (upholding use of standing or eligibility defense against unlicensed professional corporation's suit for assigned no fault benefits against an insurer); *Advanced Care of New York, Inc. v. John Friscia et al.,* Index No. 32528/99, at *8 (Sup.Ct. Kings Co. Feb. 22, 2000)(dismissing action brought by professional corporation for no fault benefits because PC did not refute defendants' allegation that it was not licensed under Educ. Law § 6509–a to provide physical therapy services, and therefore "is not entitled to recover payments under the no-fault law"). Many arbitrators have held the same. *See* Exs. C–1 to C–36 to App. to Def. Opp.; Exs. 1–22 to Supp.App. to Def. Opp.

A recent decision from the Eastern District of New York, however, held that a PC's unlawful incorporation is irrelevant to its eligibility to sue for no fault benefits assigned to it by an insured. *See State Farm v. Mallela,* 175 F.Supp.2d 401 (E.D.N.Y.2001).[8] In that case, State Farm sued several professional corporations including Urban Medical for a declaratory judgment that "a professional corporation that is unlawfully licensed has no standing to bring a claim for benefits under the No–Fault law." *Id.* at 407–08. In reaching its holding, the court reasoned that "the alleged fraudulent ownership of the PC Defendants does not affect the question whether plaintiff's insureds incurred and incur basic economic loss that plaintiff is required to compensate" and the regulation regarding assignment is "without any requirement that the provider have a certificate of authority or a validly obtained certificate of authority." *Id.* at 414–15.[9]

Subsequently, a New York state court explicitly rejected *Mallela,* stating that "[t]his Court chooses not to follow the decision of Judge Sifton in the [Eastern District], *State Farm v. Mallela,* [because] it is in conflict with the established law in the New York State Courts." *North Bronx,* Index No. 117539/01, at *2. Be-

the highest court of the state would resolve the issue." *Id.* The lower court decisions here are unequivocal and therefore may be the best predictor of how the New York Court of Appeals would resolve the issue.

8. *Mallela* also held that State Farm did not have a private right of action to enforce New York Business Corporation Law's licensing requirement for professional corporations. *Id.* at 416. This holding is addressed in connection with Counterclaims II and III. *See infra* Part III.C, D.

9. Contrary to *Mallela's* characterization of violations of BCL § 1503 and Educ. Law § 6507 as mere " 'technical deficienc[ies],' " *id.* at 417 (citation omitted), New York courts have given great deference to these require-

ments. *See, e.g., Accident Claims Determination Corp. v. Durst,* 224 A.D.2d 343, 638 N.Y.S.2d 69, 69–70 (1st Dep't 1996) (unanimously affirming lower court which held that a suit brought by unlicensed corporation to enforce payment for medical examinations performed pursuant to contract must fail as the contract was unenforceable due to its illegality); *United Calendar Mfg. v. Huang,* 94 A.D.2d 176, 463 N.Y.S.2d 497, 499 (2d Dep't 1983)(quotation omitted)(holding that a professional services corporation could not "have patients" because it lacked a license to practice medicine); *North Bronx,* Index No. 117539/01, at *2; *Millenium,* Index No. 44600/00, at *1; *Fordham,* Index No. 600403/00, at *3; *Advanced Care,* Index No. 3258/99, at *8.

cause *Mallela's* holding regarding eligibility is now in conflict with several state court rulings and a growing number of arbitral decisions, declaratory judgment would help clarify the rights and obligations of insurers and professional corporations. Therefore, defendant has stated a cause of action for declaratory relief.

### 2. Injunctive Relief

An injunction may be granted where the party seeking the injunction can show that "1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir.2000) (citation and quotation marks omitted). It is well-settled that injunctive relief is generally not available in a claim solely for money damages. *See, e.g., Twentieth Century Fox Film Corp. v. Marvel Enter.*, 277 F.3d 253, 258 (2d Cir.2002). State Farm is seeking to enjoin Universal from suing for treatment rendered prior to April 24, 2001. Because State Farm has only pled that it will suffer monetary damages if plaintiff prevails, defendant's claim for a preliminary injunction is dismissed.

### C. Counterclaim II—Fraud in the Corporate Form

In Counterclaim II, State Farm seeks damages based on Universal's violation of N.Y. BCL § 1503, which requires professional corporations to be licensed.[10] Plaintiff argues that State Farm has no

right of action to enforce section 1503 because none is implied by the legislative history of the statute and because insurers do not belong to the legislatively protected class.

Section 1503 does not expressly grant a private cause of action to enforce its requirements. However, a private cause of action may be implied if (1) plaintiff belongs to the class of legislatively intended beneficiaries and (2) a right of action would clearly promote the legislative purpose of section 1503. *See Mallela*, 175 F.Supp.2d at 416 (citing *CPC Int'l, Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 276, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987)). The ban on the corporate practice of medicine was intended to "protect consumers of health care services, not insurers who pay for those services." *Id.* at 416. *See also supra* note 2. Section 1503 of the Business Corporation Law was therefore not intended to serve as "a cause of action for an [insurer] injured by its violation," but rather "as a general police regulation, with its violation made punishable solely as a public offense." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 324, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983) (citation, quotation marks omitted). Thus, a cause of action is not implied and State Farm cannot sue for damages based upon Universal's violations of section 1503 of the BCL.[11]

State Farm argues that, even if there is no private right of action under section 1503, it may sue Universal for common law fraud based on Universal's violation of the statute. *See* Def. Opp. at 5 n.6.

---

10. In fact, State Farm contends at one point that it "is not asserting a private right of action to enforce New York's corporate form requirements." Def. Opp. at 4.

11. The state court and arbitral opinions cited by State Farm do not support its theory that it can prosecute Universal's violation of the Business Corporation Law. These cases and opinions stand for the distinct proposition that Universal is not *eligible* to seek payment of no fault benefits, and that therefore State Farm has a defense against Universal's suit. *See supra* Part III.B.

To make out a prima facie case of fraud in New York, a plaintiff must allege (1) a representation of material fact; (2) falsity; (3) scienter; (4) reliance; and (5) injury. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999).

Where courts have permitted a common law fraud claim premised on the same set of facts to which a statute applies, despite the fact that there is no private cause of action in the statute, the claim was premised on a substantive injury or loss independent of the statutory violation. *See McKesson*, 70 N.Y.2d at 284–85, 519 N.Y.S.2d 804, 514 N.E.2d 116 (despite holding that section 17(a) of the Securities Act of 1933 does not contain an express or implied right of action, plaintiffs *had* nonetheless stated a claim for common law fraud); *see also Lehman Bros. Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading Co.*, No. 94 Civ. 8301, 2001 WL 1646101, at *1, *4–*5 (S.D.N.Y. Dec. 21, 2001)(holding that plaintiff could bring common law fraud claim despite fact that New York statute, which prohibits fraud and deception in the sale of securities, does not imply a private cause of action for its violation); *Burns*, 59 N.Y.2d at 330–32, 464 N.Y.S.2d 712, 451 N.E.2d 459 (holding that plaintiff had common law right to sue for illegal strikes despite lack of a private cause of action under New York statute prohibiting illegal strikes).

Here, State Farm has lost no benefit, nor suffered an injury, that exists independently of Universal's violation of section 1503. State Farm claims that it suffered injury in the amount of $190,000 of payments to Universal that it was not legally required to make. Thus, State Farm's only injury resulted from Universal's noncompliance with section 1503. Accordingly, Counterclaim II is dismissed.

### D. Counterclaim III—Unjust Enrichment Premised on Fraud in the Corporate Form

 Counterclaim III alleges that Universal was unjustly enriched in receiving $190,000 in no fault benefits to which it was not entitled under either the no fault law or New York common law. A party is unjustly enriched where a plaintiff has shown that "(1) defendant was enriched, (2) the enrichment was at plaintiff's expense, and (3) the circumstances were such that equity and good conscience require defendant to make restitution." *Louros v. Cyr*, 175 F.Supp.2d 497, 514 (S.D.N.Y. 2001). In general, New York courts are reluctant to require the return of sums previously paid, or even to void one party's duty to perform under a contract, for lack of a statutorily required license. *See Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 128, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992); *Charlebois v. Weller Assocs.*, 72 N.Y.2d 587, 595, 535 N.Y.S.2d 356, 531 N.E.2d 1288 (1988). That premise is particularly relevant here, where State Farm's insureds received the benefits of acupuncture services rendered by Universal's duly qualified acupuncturists.[12] As Justice Cardozo explained, while:

> [t]he law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive[,] it will not for that reason aid another in

---

12. State Farm claims that its insureds did *not* receive any benefit because Universal fabricated claims, and argues that the unlawful corporate form is related to the traditional billing fraud because: (1) the licensed acupuncturists' involvement in the scheme amounted to professional misconduct in violation of New York's Education Law and therefore rendered their services noncompensable because "outside the lawful scope of their practice"; and (2) Universal submitted bills outside the Fee Schedule because bills were submitted by Nandi. *See* Def. Opp. at 2.

taking away from him that which good conscience entitles him to retain.

*Schank v. Schuchman,* 212 N.Y. 352, 359, 106 N.E. 127 (1914). Universal may not have been eligible for the benefits in the first place, but good conscience entitles it to retain the money paid for services rendered. Plaintiff's motion to dismiss Counterclaim III is granted.

### E. Counterclaim IV—Traditional Billing Fraud and Invalid Assignment

Universal also moves to dismiss Counterclaim IV, in which State Farm alleges that Universal committed traditional insurance fraud and invalid assignment by billing State Farm for services not rendered or not medically necessary. The elements of a fraud claim were set forth earlier at Part III.C. Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, all claims of fraud must be pleaded with particularity. Fed.R.Civ.P. 9(b). To comply with Rule 9(b), the complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Louros,* 175 F.Supp.2d at 510 (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir.1995)). Rule 9(b)'s specificity requirement "is intended to provide a defendant with fair notice of plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Id.* (citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994)).

State Farm alleges that plaintiff lied on patient sign-in sheets about the number of patients treated by Universal with one or more needles on various days. *See* Counterclaim ¶ 38 (referencing Patient Sign-in Sheets, Ex. F to App. to Def. Opp.). State Farm alleges that statements were made concerning the number of patients treated per day, that Nandi and Universal made the statements, that they were made between January 2000 and April 2001. State Farm claims that they were fraudulent because it would be impossible for any one acupuncturist to treat upwards of sixty patients a day—whereas the patient sign-in sheets indicate that, in many cases, over one hundred patients were treated per acupuncturist, per day. *See id.* It further alleges that Universal intended to deceive, and that State Farm justifiably relied on the misrepresentation in paying benefits. *See id.* ¶¶ 36, 41.

Because State Farm alleges facts supporting every element of a fraud claim and satisfies the specificity requirement, plaintiff's motion to dismiss Counterclaim IV is denied. Counterclaim IV also alleges that certain assignments of rights by insureds to Universal are invalid because they are dated prior to January 27, 2000, when Universal was formed. *See id.* ¶ 39. Because plaintiff's motion to dismiss this Counterclaim is denied, there is no need to address this contention.

### F. Counterclaim V—Unjust Enrichment Premised on Traditional Billing Fraud

Counterclaim V alleges that Universal was unjustly enriched by receiving $190,000 in no fault benefits for services that were never actually rendered. Accepting, as I must, the truthfulness of State Farm's allegations regarding Universal's falsified claims, State Farm has alleged facts supporting a claim for unjust enrichment. Here, good conscience dictates against allowing Universal to retain money if, in fact, Universal did not provide services to State Farm's insureds. Plaintiff's motion to dismiss Counterclaim V is denied.

## IV. CONCLUSION

For the foregoing reasons, Counterclaims II and III, and the portion of Counterclaim I seeking an injunction, are dismissed. Plaintiff's motion to dismiss Counterclaims IV and V, and the part of Counterclaim I seeking declaratory judgment, is denied.

**SO ORDERED.**