**STATE FARM MUTUAL AUTO-MOBILE INSURANCE CO.,**
Plaintiff–Appellant,

v.

Robert MALLELA, Tatiana Rybuk, Paul Schneider, Advance Physical Medicine and Rehabilitation, P.C., d/b/a Mill Basin Physical Medicine, Ridgewood Medical Specialist and Hempstead Village Medical, Allied Medical Health Care, P.C., Astoria Physical Medicine and Rehabilitation, P.C., Atlantic Medical Practice, P.C., Avenue U Medical Services, P.C., Bay Medical Health Care & Diagnostic, P.C., Bettercare Health Pain and Management, P.C., d/b/a Firstcare of Bettercare Healthcare, Canarsie Medical Services, P.C., Central Medical Rehabilitation, P.C., Central Suffolk Medical Services, P.C., Citywide Medical Practice, P.C., Daka Medical, P.C., d/b/a Island Health Professionals, Farragut Medical Care, P.C., First Queens Physical Med. and Rehabilitation, P.C., Flatbush Medical Services, P.C., Fordham Medical Pain and Treatment, P.C., Franklin Medical Rehab., P.C., Grand Central Healthcare and Physical Medicine, P.C., Health First Medical Practice, P.C., Mallela Medical Services, P.C., Medical Services of Bayside, P.C., Mid–Island Medical Healthcare, P.C., Mid–Queens Medical Services, P.C., Millenium Medical Diagnostics, P.C., N.Y. Alea Medical, P.C., N.Y. Pro Care Medical & Rehabilitation, P.C., Oceanview Medical Care, P.C., Patients Choice Medical Services, P.C., Pelham Physical Medicine and Rehabilitation, P.C., Sterling Medical Diagnostic, P.C., Triborough Medical Diagnostic, P.C., Valley Physical Medicine & Rehabilitation, P.C., Valley Rehabilitation and Medical Offices, P.C., Victory Medical, P.C., Yonkers Medical Services, P.C., d/b/a Injury Relief Medical Care, Urban Medical Diagnostics, P.C., Frank Gomez, Lewis Bazokas, Olga Gazonas, Douglas Spiel, Dr., David Bass, Lawrence Lefcourt, George Bonetti, Igor Brodsky, Gerard Fusaro, Glenn Gallo, Roger Kaplan, Kevin McPortland, Donald Musaffi, Joseph Mills, Jack Camarda, Alan Cohen, William Battaile, Injury Relief Medical Care, Dipak Nandi, Steven Nissenbaum, Harold Orr, Alan Perlmutter, Ruth Rodgers, Peter Swerz, Health care Management, Inc., Babylon Health Care Management, Inc., Bonis Management Corp., Camelot Management, Carle Place Health Management Corp., Criscay Management Corp., Franklin Healthcare Management Corp., GBI Management Corp., Jeffsam Corp., Niagara Diagnostics Inc., Office Master, Inc., Omega Management Corporation, Omega Management Corp., RMK Management Corp., Inc., Triborough Healthcare Management, Inc., Universal Express and Swapnadip Lahiri, Defendants–Appellees.

Allstate Insurance Company, GEICO Insurance Company, Progressive Insurance, New York Central Mutual Fire Insurance Company, Encompass Insurance Company, Movants.

No. 02–9407.

United States Court of Appeals, Second Circuit.

Calendared April 12, 2004.

Decided June 18, 2004.

Evan H. Krinick, Rivkin Radler LLP (Cheryl F. Korman, Stuart M. Bodoff, on the brief), Uniondale, NY; Ross O. Silverman, KMZ Rosenman LLP (Gil M. Soffer, on the brief), Chicago, IL, for Plaintiff–Appellant.

Joseph J. LaBarbera, P.C., The Law Offices of Joseph J. La Barbera, P.C., New York, NY, for Defendants–Appellees Astoria Physical Medicine and Rehabilitation, P.C. and Valley Rehabilitation and Medical Offices, P.C.

Mark L. Furman, Hoffman Einiger & Polland P.L.L.C., New York, NY, for Defendants–Appellees Grand Central Healthcare; Physical Medicine, P.C.; Yonkers Medical Services, P.C. d/b/a Injury Relief Medical Care; and Mid–Queens Medical Services, P.C.

David J. Sobel, Sobel & Seidell, LLP, Smithtown, NY, for Defendant–Appellee Bettercare Health Care Pain Management and Rehab, P.C. s/h/a Bettercare Healthcare Pain Management, P.C. d/b/a Firstcare of Bettercare Healthcare.

Steven J. Harfenist, Friedman, Harfenist & Langer (Neil S. Torczyner, on the brief), Lake Success, NY, for Defendants–Appellees Central Medical Rehabilitation, P.C.; Franklin Medical Rehab., P.C.; Valley Physical Medicine & Rehabilitation,

P.C., Lewis Bazokas, George Bonetti; Glenn Gallo; Joseph Mills; Jack Camarda; Steven Nissenbaum; Bonis Management Corp.; Criscay Management Corp.; Franklin Healthcare Management Corp.; Universal Express, Inc.; Olga Gazonas; Astoria Physical Medicine and Rehabilitation, P.C.; and Atlantic Medical Practice, P.C.

Francis J. Serbaroli, Cadwalader, Wickersharn & Taft LLP (William J. Natbony, on the brief), New York, NY; Skip Short, Short & Billy, P.C., New York, NY, for Amici Curiae Allstate Insurance Company, Geico Insurance Company, Progressive Insurance Company, New York Central Mutual Fire Insurance Company, and Encompass Insurance Company.

Before OAKES, WINTER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge.

This case raises a question of state law that is unsettled, and of central importance to the functioning of New York's no-fault automobile insurance scheme. It asks whether an insurance company may refuse to compensate medical providers for healthcare services that are within the scope of the no-fault program in every way *except* that they are provided by health care professionals employed by medical practices that, under state education and business laws, are unlawfully incorporated. On the *motion* of plaintiff-appellant State Farm Mutual Automobile Insurance Co. ("State Farm"), we CERTIFY the question to the New York Court of Appeals. *See* 22 N.Y.C.R.R. § 500.17.

## I. BACKGROUND

State Farm filed this diversity action in the United States District Court for the Eastern District of New York (Sifton, *J.*), seeking declaratory and injunctive relief,

and compensatory and punitive damages, against defendants, a number of individuals and corporations whom State Farm has accused of participating in insurance fraud.

The district court dismissed the first complaint without prejudice, granting the plaintiff leave to replead.[1] *See State Farm Mutual Automobile Ins. Co. v. Mallela,* 175 F.Supp.2d 401, 423 (E.D.N.Y.2001) (*"State Farm I"*). State Farm amended its complaint, making much the same claims, but adding several defendants and highlighting intervening amendments to the relevant insurance regulations. Judge Sifton, acting on a motion made by some defendants, dismissed the second amended complaint, this time with prejudice. *See State Farm Mutual Automobile Ins. Co. v. Mallela,* 2002 WL 31946762, at *17, 2002 U.S. Dist. LEXIS 25187, at * 64 (E.D.N.Y. 2002) (*"State Farm II"*).

State Farm then brought this appeal. But because the district court dismissed the complaint only as to the "Moving Defendants," *id.,* although other defendants had been served, the order below was neither final nor appealable. *See Ruffolo v. Oppenheimer & Co.,* 949 F.2d 33, 36 (2d Cir.1991). We raised the issue *nostra sponte,* and State Farm, in order retroactively to create a final judgment and establish appellate jurisdiction, agreed to dismiss with prejudice any outstanding claims against those defendants who had not moved to dismiss. *See McManus v. Gitano Group, Inc.,* 59 F.3d 382, 383–84 (2d Cir.1995).

### A. Statutory Scheme

We begin by reviewing the New York statutory and regulatory framework that governs this diversity case. In 1973, the New York State Legislature passed the

precursor to today's Comprehensive Motor Vehicle Insurance Reparations Act, *see* N.Y. Ins. Law §§ 5101 *et seq.* (formerly N.Y. Ins. Law §§ 670 *et seq.*), supplanting the state's common law tort remedies for most injuries associated with automobile accidents with a no-fault insurance scheme. *See Medical Soc'y v. Serio,* 100 N.Y.2d 854, 860, 768 N.Y.S.2d 423, 800 N.E.2d 728 (2003). The purpose of the Act was to create a simple, efficient system that would provide prompt compensation to accident victims without regard to fault, and in that way reduce costs for both courts and insureds. *See Serio,* 100 N.Y.2d at 860, 768 N.Y.S.2d 423, 800 N.E.2d 728. The Act permits injured parties to recover benefits from insurers for "basic economic loss," including medical expenses, that arise out of the use or operation of a covered motor vehicle. *See* N.Y. Ins. Law § 5102. It also provides for a "Fee Schedule" which establishes permissible charges for specific services offered by particular kinds of providers. *See* N.Y. Ins. Law § 5108, 11 N.Y.C.R.R. § 68.

The Superintendent of Insurance promulgated regulations to implement this statute, and has amended them several times. One set of revised regulations was struck down as a violation of the New York State Administrative Procedure Act in *Matter of the Medical Society of the State of New York, Inc. v. Levin,* 280 A.D.2d 309, 723 N.Y.S.2d 133 (N.Y.App. Div.2001). While an appeal from that decision was pending, the Superintendent again revised the regulations. The new revised regulations were approved by the Court of Appeals in *Serio,* 100 N.Y.2d at 862, 768 N.Y.S.2d 423, 800 N.E.2d 728.

---

**1.** The district court also dismissed one of State Farm's claims—alleging a violation of New York's General Business Law § 349—with prejudice. *State Farm Mutual Automobile Ins. Co. v. Mallela,* 175 F.Supp.2d 401, 423 (E.D.N.Y.2001). State Farm does not challenge that ruling.

The regulations permit covered parties to assign their benefits to health care providers, who in turn submit claims to insurers for treatment and services given to the injured individual. *See* 11 N.Y.C.R.R. § 65–3.11. To guarantee that insureds are promptly compensated, the regulations also established strict, and brief, time periods for claim processing. Under these, insurers must, by forwarding the claimant certain prescribed forms, request any necessary "verification" of claims within ten days of receiving a completed claim. *See* 11 N.Y.C.R.R. § 65.15(d). Upon getting verification, insurers have thirty days within which to pay or deny a benefits claim. *See* 11 N.Y.C.R.R. § 65.15(g).

### B. The Allegedly Key Sentence

A sentence which was added to the regulations in the last revision, and came into effect in 2001, is central to plaintiff's argument in the case before us. It reads:

> A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

11 N.Y.C.R.R. § 65–3.16(a)(12). Plaintiff contends that the requirement that any healthcare provider be properly licensed must be read in conjunction with the many statutes and rules that govern the licensing of healthcare providers in New York State. Specifically, because of the state's longstanding concern that the so-called "corporate practice of medicine" could create ethical conflicts and undermine the quality of care afforded to patients, New York forbids non-physicians from employing physicians or controlling their practices. Thus, under New York's Business Corporation Law, all professional service corporations ["P.C.s"] that are licensed to practice medicine must be owned and controlled only by licensed physicians. N.Y. Bus. Corp. Law §§ 1507, 1508. Additionally, P.C.s must file copies of their certificate of incorporation with the Department of Education and, from that Department, obtain certificates of authority to practice medicine. *See* N.Y. Educ. Law § 6507(4)(c). According to N.Y. Business Corporation Law § 1503, these certificates of incorporation must, *inter alia,* specify the names of all shareholders, directors, and officers of a P.C., and include documentation certifying that such individuals are licensed to practice medicine. Finally, the Attorney General is given the power to bring an action to dissolve a P.C. if the corporation "procured its formation through fraudulent misrepresentation or concealment of a material fact." N.Y. Bus. Corp. Law § 1101(a)(1). New York also assigns criminal penalties to those who fraudulently obtain a license, N.Y. Educ. Law § 6512, or knowingly submit false documents to a public office, N.Y. Penal Law § 175.10.

### C. Facts Alleged by State Farm

In its second amended complaint, State Farm named a multitude of defendants, falling into four categories: (1) the "P.C. Defendants," purportedly fraudulently incorporated and illegally operated or controlled by non-physicians; (2) the "True Owners," the individuals allegedly controlling these P.C.s, (3) the "Paper Owners," licensed doctors purportedly lending their names and authority to the True Owners to facilitate the fraudulent incorporations; and (4) the "Management Company Defendants," which provided the mechanism to transfer the profits of the P.C. Defendants to the True Owners. State Farm alleges that the Paper Owners were paid by the True Owners to sign documents that affirmed, falsely, that the Paper Owners

were in control of the P.C. Defendants. The profits of these P.C.s were then supposedly funneled to non-physicians through Management Companies, for example, through contracts that promised the P.C. Defendants services in exchange for inflated fees.[2] According to State Farm, such schemes directly violate the legal framework detailed above and hence preclude recovery under the no-fault scheme for any services rendered by physicians employed by the P.C. Defendants.

### D. Claims on Appeal

In this appeal, State Farm asks us to overturn the district court's dismissal of its plea for declaratory and injunctive relief, and to hold that the P.C. Defendants are not entitled to receive assigned benefits under the no-fault program. Appellant offers multiple theories in support of this claim. It contends that these defendants are barred from recovery (1) because they were not lawfully licensed when the services in question were provided, (2) because the physicians and other health care professionals who actually rendered the services were acting "outside the lawful scope of their licenses" in aiding and abetting the illegal activities of the True Owners; (3) because more than $123,000 of the charges that the P.C. Defendants billed to State Farm were not authorized by the Fee Schedule, as the non-physician True Owners were not authorized to bill for such medical services, and (4) because the charges were illegal, against public policy, and otherwise unenforceable under New York law.

It is important to note that all of these theories arise solely out of the allegation of underlying fraud in the incorporation of the P.C. Defendants. The claims made in this case can therefore be distinguished from the broader claims recently made by insurers in other courts. These latter claims assert not only fraud in the corporate form, but more traditional forms of fraud as well. For example, they allege that parties billed for services that were not provided or were medically unnecessary, or billed services at the wrong rate. *See, e.g., Oxford Health Plans (N.Y.), Inc. v. BetterCare Health Care Pain Mgmt. & Rehab P.C.,* 305 A.D.2d 223, 224, 762 N.Y.S.2d 344 (N.Y.App.Div., 1st Dep't 2003); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,* 196 F.Supp.2d 378, 387 (S.D.N.Y.2002).

In the instant case, however, and despite the district court's encouragement, *see State Farm I,* 175 F.Supp.2d at 408, 423, State Farm did not add any such allegations when it amended its complaint. Accordingly, it does not argue that any of the services in question were not rendered, or were performed by non-licensed health professionals. All of appellant's arguments for declaratory judgment therefore turn on one central question: whether the illegal incorporation of a P.C. so fatally taints the services provided by the professionals employed by it that these services—although legitimate and covered by no-fault automobile insurance in every other way—need not be compensated by an insurer.

Similarly, State Farm's common law claims, in the instant case, also rely solely upon the allegation of fraud in the corporate form. In these common law claims, appellant seeks to recover millions of dollars already paid to the P.C. Defendants. Recovery is warranted, appellant alleges,

---

**2.** State Farm has proffered affidavits from Paper Owners Swapnadip Lahiri, M.D., Robert Mallela, M.D., and Edward M. Weiland, M.D., averring that they were paid fees by some of the True Owners for the use of their names in registering P.C. Defendants, to facilitate the sort of fraud alleged by State Farm.

because defendants committed fraud when they knowingly made material misrepresentations—that they were lawfully licensed to bill for the services in question—to induce State Farm to pay their claims. Recovery also lies, State Farm asserts, under a theory of unjust enrichment, since defendants purportedly benefitted at State Farm's expense, by orchestrating violations of statutes designed to protect the public health and welfare.

After appellate briefing was completed, State Farm moved to have one primary question certified to the New York Court of Appeals: "Whether a professional medical corporation that unlawfully obtains a license from the Department of Education to provide professional services, and is secretly owned and/or controlled by non-physicians, is eligible to be reimbursed under New York's No–Fault law for No–Fault benefits." [3] For the reasons that follow, we agree that the Court of Appeals should have an opportunity to answer this question.

## II. DISCUSSION

"Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994). But in difficult cases, we are not limited solely to making predictions, because New York law and Second Circuit Rule § 0.27 allow us to certify to New York's highest court "determinative questions of New York law [that] are involved in a cause pending before [us] for which there is no controlling precedent of the Court of Appeals." 22

N.Y.C.R.R. § 500.17. The certification process "permits federal courts to ask the highest court of a state directly to resolve a question of state law and to do so while the federal suit is pending," *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 151 (2d Cir. 2001), and it provides us with a "valuable device for securing prompt and authoritative resolution of unsettled questions of state law, especially those that seem likely to recur and to have significance beyond the interests of the parties in a particular lawsuit," *Kidney v. Kolmar Labs., Inc.*, 808 F.2d 955, 957 (2d Cir.1987).

We have deemed certification appropriate where state law is not clear and state courts have had little opportunity to interpret it, *see, e.g., Unigard Sec. Ins. Co. v. North River Ins. Co.*, 949 F.2d 630, 631–32 (2d Cir.1991), where an unsettled question of state law raises important issues of public policy, *see, e.g., Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 47 (2d Cir.2001), where the question is likely to recur, *see, e.g., Mark A. Varrichio & Assocs. v. Chicago Ins. Co.*, 312 F.3d 544, 550 (2d Cir.2002), and where the result "may significantly impact a highly regulated industry," *Golden v. Winjohn Taxi Corp.*, 311 F.3d 513, 515 (2d Cir.2002), *certification withdrawn per settlement of the parties*, 323 F.3d 185 (2d Cir.2003). We believe certification is warranted in the case before us.

### A. *New York Law is Unclear*

The relevant New York laws and regulations do not give a clear answer to the question before us. The statutory framework is skeletal, and makes no reference to the licensing status of assignees. The

---

**3.** State Farm also suggested that additional, related, questions might be certified, including whether (1) individuals who provide services through such P.C.s act outside the lawful scope of their licenses, (2) whether the charges submitted by such P.C.s are authorized by the Fee Schedule, and (3) whether the charges submitted through such corporations are, in general, illegal, against public policy, and unenforceable in New York.

plaintiff relies heavily upon the Revised Regulations promulgated in 2001 by the Insurance Superintendent, which indicate that "[a] provider of health care services is not eligible for reimbursement . . . if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York." 11 N.Y.C.R.R. § 65–3.16(a)(12). According to the Notice issued alongside the revised rule, this section was "added to clarify that a health care provider must be properly licensed to be eligible for reimbursement under no-fault." 2001–19 N.Y. St. Reg. 17 (May 9, 2001). But as the district court noted,

> [t]he regulatory language itself does not resolve this interpretive dispute, and the DOI's notice statement does not clarify the ambiguity. Requiring health care providers to be "properly licensed" and "meet any applicable . . . licensing requirements" before they are eligible for reimbursement could be reasonably interpreted as a requirement that health care providers have all the licenses that are required under state law for professional service corporations that provide health care services to individuals insured under no-fault law. This language could also be reasonably interpreted as requiring health care providers to meet every precondition for every license that professional service corporations providing health care services are required to have under state law. Furthermore, it is unclear whether this regulatory licensing requirement is intended to authorize insurers to deny benefits claims on the basis of violations of the requirement.

*State Farm II,* 2002 WL 31946762, at *9, 2002 U.S. Dist. LEXIS 25187, at *30.

Two Opinion Letters that were issued by the Department of Insurance are seemingly less ambiguous.[4] But they are of no more ultimate help to us because such opinions are, according to their own terms, "informal and not binding on any court." *See also Park Radiology P.C. v. Allstate Ins. Co.,* 2 Misc.3d 621, 626 n. 2, 769 N.Y.S.2d 870 (N.Y.C.Civ.Ct.2003) (noting that the Insurance Superintendent is not "empower[ed] . . . to rule by informal advisory opinion").

The district court did an admirable job of discussing the myriad of trial court and arbitral decisions cited by the parties, and rightly concluded that these cases can generally be distinguished in ways that lessen their predictive power. *See, e.g., Kew Forest Med., P.C. v. Progressive Insurance Co.,* No. 9568/01 (N.Y.Sup.Ct. Mar. 21, 2002) (refusing to enjoin an arbitrator from considering matters relating to Kew Forest's ownership, because, *inter alia,* Kew Forest had itself elected to arbitrate these claims and was therefore not entitled to a stay); *State Farm Ins. Co. v. North Bronx Med.,* P.C., No. 118995/01 (N.Y.Sup. Ct. Mar. 20, 2002) (affirming, without discussion, eight arbitral decisions that were unopposed); *State Farm Ins. Co. v. North Bronx Med., P.C.,* No. 117539/01 (N.Y.Sup.

---

**4.** One Opinion Letter, issued on January 26, 2000, states that "when a provider of health benefits is given an assignment by an eligible injured person and becomes the claimant for purposes of reimbursement . . . that assignee must be adhere [*sic*] to all applicable New York statutes which grant authority to provide health services in New York State. That includes all instances where . . . a person or corporate entity must be properly licensed to perform services, so as not to engage in the corporate practice of medicine." Another such Letter, published on January 11, 2000, indicates that "it is appropriate for an arbitrator or court to determine, as a matter of standing, whether the claimant is lawfully authorized to bill for No–Fault services under New York State law . . . [and] to take judicial notice of other New York State laws that relate to the lawful authority of an entity to bill for reimbursement."

Ct. Jan. 17, 2002) (affirming an arbitral award, after noting that the court did not have the power to set aside the award even on the assumption that the arbitrator had wrongly interpreted the requirements of the no-fault law); [5] *Fordham Med. Pain & Treatment P.C. v. State Farm Mutual Ins. Co.*, No. 600403/00 (N.Y.Sup.Ct. Jan. 4, 2001) (denying summary judgment to a purportedly fraudulently incorporated plaintiff P.C. who brought suit to force insurer to pay its claims); *Advanced Care of New York, Inc. v. Friscia*, No. 32528/99 (N.Y.Sup.Ct. Feb. 22, 2000) (refusing to grant a preliminary injunction to a Management Company that sought to enforce a fee-splitting arrangement with a physician and require that physician to bill insurers under the no-fault law, in part because the management agreement itself was unenforceable and the Management Company—which, unlike the P.C. Defendants in this case, did not even possess a license for the relevant professional service—was not entitled to recover under the no-fault law).

The only New York appellate court case cited to us, *Valley Physical Medicine & Rehabilitation P.C. v. New York Central Mutual Insurance Co.*, 193 Misc.2d 675, 753 N.Y.S.2d 289 (Sup.Ct.App.Term, 2d Dep't, 2002), also offers little guidance. It involved allegations of more traditional billing fraud in addition to claims based on wrongful corporate structure. And the court's holding provided only that "discovery requests pertaining to plaintiff's license status and corporate structure, *which are related to allegations of fraudulent billing*, are proper discovery subjects." *Id.* at 290 (emphasis added). It appears, therefore, that no appellate court

in New York has addressed the question put to us in this case.

As such, we have little trouble concluding that there is no "controlling precedent" in New York that governs this case. 22 N.Y.C.R.R. § 500.17.

### B. Other Factors Favoring Certification

The issue posed is clearly recurring, and appears to be one of great importance to the State of New York. Answering it will require consideration of the important policy considerations that gave rise to the no-fault scheme itself. Fraud under the no-fault scheme has apparently been a serious, and growing, problem in New York. *See Serio*, 100 N.Y.2d at 861, 768 N.Y.S.2d 423, 800 N.E.2d 728 (noting that between 1992 and 2001, reported automobile insurance fraud, the bulk of which occurred in the no-fault area, increased by 1700 percent, and added an estimated $100 per year to the insurance costs of the average New York driver). State Farm asserts that the prohibition on the corporate practice of medicine directly deters fraud, and, hence, that the alleged corporate structure adopted by the P.C. Defendants promotes and enables fraud. But while fraudulent claims undermine the no-fault system, allowing insurers great latitude to inquire into potential flaws in a medical providers' license might also frustrate "the goals of the speedy payment objective of the No-Fault Law. Those goals, a driving force behind both the no-fault and liability coverage insurance laws, focus on avoiding prejudice to insureds by providing for prompt payment or disclaimers of claims,"

---

5. The 67 arbitral decisions cited in State Farm's favor are of similarly limited value in predicting the view of the New York Court of Appeals. These generally denied recovery to medical providers that could not demonstrate that they were owned and / or operated by physicians. But, being arbitral decisions, they do not represent the view of courts on the matter, for "absent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law." *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 308, 473 N.Y.S.2d 774, 461 N.E.2d 1261 (1984).

*Presbyterian Hosp. v. Maryland Cas. Co.,* 90 N.Y.2d 274, 284, 660 N.Y.S.2d 536, 683 N.E.2d 1 (1997). Where public policy considerations "point in different directions," as they do here, certification is a particularly appropriate course of action. *See Shaffer,* 245 F.3d at 47.

Furthermore, if we were to answer the main question in State Farm's favor, a host of other state law questions would arise which we are singularly unsuited to decide. Defendants suggest, for example, that a ruling in favor of State Farm would mean that insurers could deny claims on the basis of other violations of licensing laws, including technical ones such as the failure to pay an annual licensing fee. But it is not obvious that once an insurer is allowed to look beyond the facial validity of a medical license, any defect in that license is disqualifying. And, ultimately, only state courts could determine the issue.[6]

Similarly, defendants raise another issue of New York law that would arise only if the initial question posed is answered as State Farm wishes. This is: would the applicable revised regulation, 11 N.Y.C.R.R. § 65–3.16(a)(12), if it is read to bar reimbursement, be given retroactive effect? The previous implementing regulations did not include this reimbursement bar,[7] and defendants have questioned whether these revised regulations should be afforded retroactive effect. There is a general presumption, under New York law, that legislative rules and amendments of administrative regulations should be applied only prospectively. *See, e.g., Good Samaritan Hosp. v. Axelrod,* 150 A.D.2d 775, 777, 542 N.Y.S.2d 28 (N.Y.App. Div., 2d Dep't 1989) (" '[R]ules will not be construed to have retroactive effect unless their language requires this result.' "); *Linsley v. Gallman,* 38 A.D.2d 367, 369, 329 N.Y.S.2d 486 (N.Y.App. Div., 3d Dep't 1972), *aff'd on op. below,* 33 N.Y.2d 863, 352 N.Y.S.2d 199, 307 N.E.2d 257 (1973). But State Farm, in its plea for damages, argues that the revision in the regulations

---

**6.** This question greatly worried the district court, which remarked that

> [t]here are, moreover, myriad grounds for challenging the licenses of a professional service corporation. For example, a professional service corporation could fail to hold an annual meeting or pay the appropriate license renewal fees. Plaintiff's interpretation of the regulations would permit insurers to demand information about compliance with any and all such requirements before paying benefits. Taken to a logical extreme, an insurer could question a provider about whether all of its owners and physicians have been making their child support payments, because failure to pay child support in New York triggers the revocation of professional licenses under Domestic Relations Law § 244–c.

*State Farm II,* 2002 WL 31946762, at *11, 2002 U.S. Dist. LEXIS 25187, at *37. State Farm argues on appeal that the district court was wrong to adopt such a black and white picture of the regulations, and to construe them either to allow no inquiry into corporate status, or to permit an endless inquiry into the most trivial of licensing requirements. Like Goldilocks, State Farm then pronounces an intermediate kind of inquiry—one that would "require[ ] health care providers to establish that they are lawfully licensed to perform services"—to be just right. But this proposed standard is itself far from pellucid, and the parties cite no state authority that would assist us in deciding where the line could properly be drawn.

**7.** The regulations previously provided only that that "[u]pon assignment by the applicant . . ., [an insurer] shall pay the providers of services . . . directly." 11 N.Y.C.R.R. § 65.15(j)(1). On February 1, 2000, the Superintendent amended these regulations, and added two words to this rule, so that it read: "[u]pon assignment by the applicant . . ., [an insurer] shall pay the *state licensed* providers of services . . . directly." 11 N.Y.C.R.R. § 65–3.11 (emphasis added). As noted above, these amended regulations were struck down by *Matter of the Medical Society of the State of New York, Inc. v. Levin,* 280 A.D.2d 309, 723 N.Y.S.2d 133 (N.Y.App.Div.2001).

simply gave voice to a mandate from the Superintendent that was "always" in effect. This question, should it arise, is, like the issue of what licensing defects are disqualifying, best answered by New York courts.

Finally, the district court dismissed State Farm's fraud and unjust enrichment claims. It concluded that deficiencies in a P.C.'s corporate structure are not grounds upon which an insurer can legitimately refuse reimbursement. Accordingly, the court found that the plaintiff had "done no more than pay claims it was required by law to pay." *State Farm II*, 2002 WL 31946762, at *16, 2002 U.S. Dist. LEXIS 25187, at *60 (internal quotation marks omitted). But if State Farm were determined to have had the authority to deny payments to the defendants, State Farm's fraud and unjust enrichment damage claims would have to be squarely addressed. And we are aware of no state court that has done so.[8]

A great deal more could certainly be said about each of these common law claims.[9] But since the initial availability of such claims itself depends on the answer given to the primary, uncertain question of New York law, it would be inappropriate for us to comment further on them.

Should the Court of Appeals choose to address the question that we have deemed necessary to certify, and should its disposition of that question raise these subsidiary issues, we would greatly welcome its guidance on any of these other issues as well.

\* \* \* \* \* \*

This case involves an important, determinative, and unsettled question of state law. The question posed will surely recur and has important public policy implications. It also sits at the threshold of a series of other complicated questions of state law. Accordingly we deem it appropriate to CERTIFY the following question to the New York Court of Appeals:

1) Is a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Education Law § 6507(4)(c) entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 *et seq.* and its implementing regulations, for medical services rendered by licensed medical practitioners?

The Court of Appeals may, of course, reformulate or expand upon this question as it wishes, and we would especially welcome the Court's guidance with respect to

---

**8.** A federal district court recently faced with similar claims concluded (1) that the insurer could not recover under a theory of common law fraud, pursuant to violations of N.Y. Business Corporation Law § 1503 (which requires that P.C.s be licensed), because that statute provides no private right of action, and because the insurer alleged no substantive injury apart from the statutory violation, and (2) that the insurer could not recover for unjust enrichment because "New York courts are reluctant to require the return of sums previously paid, or even to void one party's duty to perform under a contract, for lack of a statutorily required license." *Universal Acupuncture Pain*, 196 F.Supp.2d at 387; *see also id.* at 386–88.

**9.** For example, defendants argue that State Farm is time barred from bringing any dam-

age claims because it did not raise this issue, or request verification of the P.C. Defendants' status, in accordance with the strict statutory and regulatory requirements for the challenging of claims. This defense itself raises a series of complex New York law questions. *See* N.Y. Ins. Law § 5106; 11 N.Y.C.R.R. § 65.15; 11 N.Y.C.R.R. § 65–3.5; *Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274, 278, 282, 660 N.Y.S.2d 536, 683 N.E.2d 1 (1997); *Central Gen. Hosp. v. Chubb Group of Ins. Cos.*, 90 N.Y.2d 195, 199, 659 N.Y.S.2d 246, 681 N.E.2d 413 (1997) (collectively, establishing strict time requirements within which insurers must raise defenses to claims and indicating the existence of some exceptions to such bars).

510

any issues that could arise depending on its answer to the question certified.

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this·opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.

CERTIFICATE

The following question is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and 22 N.Y.C.R.R. § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.

1) Is a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Education Law § 6507(4)(c) entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 *et seq.*, and its implementing regulations, for medical services rendered by licensed medical practitioners?